RANDALL, Circuit Judge:
On the petition of First South Savings Association for a writ of mandamus, we issue a limited mandamus requiring the district court (subject to its resolution of a mootness issue referred to herein) to issue a stay pending appeal of the bankruptcy court’s “Order Granting Motion for Authority to Incur Secured Debt; to Enter into Post-Petition Financing Agreement; and to Grant Super-Priority Lien Pursuant to Section 364(d) of the Bankruptcy Code,” and requiring the district court to hold a prompt hearing on the merits of the appeal of that order.
I.
The debtor, Sabine Development Ltd., is a Texas limited partnership. The general partner of the debtor is Park Commercial Investments, Inc. (“Park Commercial”), which is a Texas corporation. Lloyd Hayes is the majority stockholder of Park Commercial and Hayes controls the debtor. First South Savings Association (“First *702 South”), a Texas savings and loan, holds the first lien in the principal amount of $10 million on the debtor’s sole asset, a ten-story office building (“office building” or “building”).[1] The office building is adjacent to the Waller Creek Hotel (“hotel”), which is owned by a limited partnership, Waller Creek Ltd., of which Park Commercial is the general partner. The Waller Creek Garage (“garage”), connected to the hotel, is owned by another Texas limited partnership of which Park Commercial is the general partner.
On May 6, 1986, the day of First South’s scheduled foreclosure on the office building, the debtor filed a petition under Chapter 11 of the Bankruptcy Code of 1978 (“Bankruptcy Code” or “Code”). On June 23, 1986, First South filed a motion for relief from the automatic stay. Thereafter, on September 2, 1986, the debtor filed its “Emergency Motion for Authority to Incur Secured Debt; to Enter Into Post-Petition Financing Agreements; and to Grant Super-Priority Lien Pursuant to § 364(d)” (“Super Priority Financing Motion”), seeking to incur additional indebtedness in the amount of $2 million. The proposed loan would give the lender, First Bank & Trust, Groves, a first lien on the office building which would subordinate all other lienholders’ interests in the office building. The proposed use of the funds is to “convert”'[2] the office building into hotel/convention center space.
The office building is approximately fifty percent completed including tenant finish out; the remaining fifty percent of the building lacks tenant finish out. From the date the Chapter 11 petition was filed, there has been no further construction on the office building. The office building is seven percent leased. There are no proposed leases or contracts for the remaining space.
On September 9, 1986, a preliminary hearing on First South’s motion for relief from stay was held. At the close of that day’s hearing, the bankruptcy court ordered the debtor to make an adequate protection payment in the amount of $25,000 to First South, pending the conclusion of the hearing on October 24, 1986. The scheduled October 24 hearing was, upon the debtor’s request, postponed, and another $25,000 adequate protection payment was ordered pending the final hearing on the motion to lift stay set for December 9, 1986.
At the continuation of the hearing on December 16, 1986, the expert appraisal witness called by First South, Gerald Teel, M.A.I., S.R.P.A., testified that the fair market value of the office building on that date was $7.5 million. The debtor’s expert appraisal witness, Dr. Terry V. Grissom, Ph.D., M.A.I., S.R.P.A., agreed. Teel testified that the value of the office building had decreased by approximately $840,000 *703 since the filing of the petition in bankruptcy and Grissom agreed with that conclusion, at least insofar as the value was assessed based on the assumption that the building was used as an office building as opposed to a hotel/convention center.[3]
According to Grissom, the debtor’s own appraiser, if the proposed $2 million loan was made, the fair market value of the office building would be $8.5 million. Thus, the $2 million infusion would enhance the value of the office building by only $1 million. Both parties agreed that there is no equity in the property.
At the close of testimony on December 19, 1986, the bankruptcy court took the various motions under advisement. First South opposed the super priority financing[4] on the grounds that: (1) the debtor failed to satisfy the requirement under section 364(d)(1) that it show that it had pursued alternative methods of financing and that other types of financing were not available; (2) the debtor failed to satisfy section 364(d)(l)’s requirement that it provide adequate protection of all senior lien-holders’ interest in the office building (the debtor has little cash income and no other assets or other means to provide adequate protection); (3) the security documents and loan agreement the debtor had proposed for the super priority financing provides for “cross-collateralization” of the proposed indebtedness of the debtor with all other outstanding indebtedness owed by Lloyd Hayes and/or Lloyd Hayes entities; (4) the loan documents had expired at the time of trial and were conditioned on facts not in evidence or contradicted by the evidence; and (5) the debtor proposed to change the nature of the collateral and the bargain between First South and the debt- or by changing the collateral from an office building to a hotel/convention center violating the principle that a debtor cannot unilaterally force a secured lender to accept a complete and total change in the nature of the collateral upon which the lender relied for security for its loan.
In an order dated January 28,1987 (“Super Priority Financing Order”), the bankruptcy court granted the debtor’s Super Priority Financing Motion,[5] and notice of appeal was filed by First South in the district court on the following day, and the district court has jurisdiction over that appeal. The bankruptcy court denied First South’s motion for stay pending appeal in an order dated March 9, 1987. The district court denied a stay motion on March 31, 1987.
On April 3, 1987, First South filed a petition in this court for a writ of mandamus. First South requested, pursuant to this court’s decision in National Bank of Commerce v. Barrier (In re Barrier), 776 F.2d 1298 (5th Cir.1985), that this court issue a “limited mandamus” requiring the district court to issue a stay pending appeal of the bankruptcy court’s Super Priority Financing Order and requiring the district court “to hold a prompt hearing on the merits of First South’s appeal of [that] Order.” Petition for Writ of Mandamus or in the Alternative Motion for Stay Pending Appeal at 2 [hereinafter referred to as “Mandamus Petition”]. On April 6, 1987, this panel stayed the bankruptcy court’s order pending further order of this court and directed that respondents file a response to the petition by April 13, 1987. On April 17, 1987, we denied the petition for writ of mandamus and, in the same order, vacated the stay order entered on April 6, 1987. Thereafter, we granted First South’s motion for reconsideration of *704 our April 17 order and, on May 4, 1987, we ordered that all further proceedings in this matter be stayed pending oral argument on the petition for writ of mandamus.
After hearing argument on the petition and carefully considering the materials submitted by the parties, we are now persuaded that a limited mandamus should issue requiring the district court (subject to its resolution of the mootness issue referred to in Part IV infra) to enter a stay of the bankruptcy court’s Super Priority Financing Order pending appeal and requiring the district court to hold a prompt hearing on the merits of that appeal.
II.
In its petition for writ of mandamus, First South argues that no other avenue of appeal is available to it and that the harm to First South would be irreparable if a stay pending appeal is not entered. First South contends that, without the issuance of the requested relief, it would lose its ability to prosecute an appeal to the district court because, under 11 U.S.C. § 364(e),[6] such an appeal might be rendered moot. Moreover, argues First South, based on the applicable legal standards, the district court, and the bankruptcy court before that, abused their discretion in denying its motion for a stay pending appeal. First South points to the criteria applied to determine whether a stay pending appeal should issue:
(1) Whether the movant has made a showing of likelihood of success on the merits;
(2) Whether the movant has made a showing of irreparable injury if the stay is not granted;
(3) Whether the granting of the stay would substantially harm the other parties; and
(4) Whether the granting of the stay would serve the public interest.
See, e.g., Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir.1982) {“Ruiz II”). Further, First South notes that this court has recognized that “the movant need not always show a ‘probability’ of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.” Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. Unit A Jun. 1981) {“Ruiz I”). First South then undertakes to show that, in light of those criteria, the denial of a stay pending appeal constitutes an abuse of discretion.
With respect to its “likelihood of success on the merits,” First South notes the requirements of section 364(d)(1) — that the trustee is unable to obtain credit otherwise and that there is adequate protection of the interest of the holder of the lien that will be subordinated — and contends that the debtor has not met these statutory requirements. Thus, according to First South, its likelihood of succeeding on the merits is great.
With respect to “irreparable injury,” First South argues that section 364(e) specifically states that the reversal or modification on appeal of an authorization to obtain credit does not affect the validity of any debts incurred, or any priority or liens so granted, unless the authorizing and incurring of such debt or the granting of such prior lien is stayed pending appeal. Under the statute, absent a stay pending appeal, even if First South succeeded in having the Super Priority Financing Order modified or reversed, any such modification or reversal would not affect First Bank & Trust, Groves’s super priority position if the loan was made in good faith with proper notice.[7] Due to the express provisions *705 of the Bankruptcy Code, then, the harm to First South would be irreparable.
First South goes on to argue that the debtor will not be harmed by the granting of the stay,[8] pointing out that the debtor first sought the super priority financing in September of 1986, and that there was no testimony at any of the hearings in this case that time was of the essence or that the construction had to commence on a certain date. First South notes that the debtor has admitted that there are no existing leases or commitments for leases that require immediate work on the interior of the building. According to First South, the debtor will not be harmed by the delay caused by an appeal of the bankruptcy court’s Super Priority Financing Order.
Finally, addressing the “public interest,” First South argues that the granting of the stay pending appeal would serve the public interest and the interests of the debtor’s creditors. First South’s argument revolves around its contention that “[t]he Debtor is extending the law of § 364(d) beyond the limits of the statute and existing case law. Public policy mandates that such an extension, and its direct implications on commercial lending, should not be sanctioned solely by a lower court, but should be allowed to be reviewed by a higher court on appeal.” Mandamus Petition at 21-22.
III.
A.
It is well-established that the mandamus remedy “is a drastic one, to be invoked only in extraordinary situations.” Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); see also Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). To ensure that the writ of mandamus will issue only in extraordinary circumstances, the Supreme Court has consistently stated that the party seeking the issuance of the writ must “have no other adequate means to attain the relief he desires” and must satisfy the burden of showing that his right to issuance of the writ is “clear and indisputable.” Allied Chemical, 449 U.S. at 35, 101 S.Ct. at 190 (citations omitted). This court has frequently echoed those words of the Supreme Court. See, e.g., In re Davis, 730 F.2d 176, 181 (5th Cir.1984); Commodity Futures Trading Comm’n v. Preferred Capital Inv. Co., 664 F.2d 1316, 1321 (5th Cir.1982); American Trucking Assocs., Inc. v. Interstate Commerce Comm’n, 673 F.2d 82, 86 n. 6 (5th Cir.1982), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).
A panel of this court recently stated that the extraordinary remedy of mandamus is “available only where there is a clear and indisputable abuse of discretion or usurpation of judicial power by the trial court.” Cajun Elec. Power Coop., Inc. v. Riley Stoker Corp. (In re Cajun Elec. Power Coop., Inc.), 791 F.2d 353, 365 (5th Cir.1986) (citing Allied Chemical, 449 U.S. at 34-36, 101 S.Ct. at 189-90; Schlagenhauf v. Holder, 379 U.S. 104, 109-10, 85 S.Ct. 234, 237-38, 13 L.Ed.2d 152 (1964); In re Sessions, 672 F.2d 564, 566 (5th Cir.1982)). That statement is, in our view, an accurate assessment of the mandamus case law. We think it is important, however, to review the authority underlying that standard and to elaborate on the meaning of such a standard because of the existence of some uncertainty about the availability of the mandamus remedy where the district court’s decision forming the basis for the mandamus petition is a matter committed to the district court’s discretion.
*706 In 1984, a panel of this court stated that “[mjandamus is appropriate to correct the grant of a stay which amounts to a clear abuse of discretion.” Southern Pac. Transp. Co. v. San Antonio, 748 F.2d 266, 270 (5th Cir.1984). However, in a footnote, the panel noted that the opinion of a plurality of the Supreme Court in Will v. Calvert Fire Ins. Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) (plurality), “arguably raises some doubt whether this use of mandamus will continue to be proper in future cases.” Id. at 270 n. 9. The plurality, in an opinion authored by Justice Rehnquist, said, in relation to the burden of showing a clear and indisputable right to issuance of the writ, that “[w]here a matter is committed to the discretion of a district court, it cannot be said that a litigant’s right to a particular result is ‘clear and indisputable.’ ” Calvert, 437 U.S. at 665-66, 98 S.Ct. at 2559. Four other justices in Calvert seemed to continue to apply a “clear abuse of discretion” standard, see id. at 676, 98 S.Ct. at 2564 (Brennan, J., dissenting), while one justice did not address the issue at all. See id. at 667, 98 S.Ct. at 2559 (Blackmun, J., concurring in the judgment).
In a 1980 case, Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam), the Supreme Court again addressed the question of the availability of mandamus relief where a matter is committed to the discretion of the district court. At issue in Allied Chemical was the Tenth Circuit’s issuance of a writ of mandamus directing the trial court, that had granted a new trial motion, to restore a jury verdict as to liability. In a per curiam decision, the Court said: “The authority to grant a new trial ... is confined almost entirely to the exercise of discretion on the part of the trial court. Where a matter is committed to discretion, it cannot be said that a litigant’s right to a particular result is ‘clear and indisputable.’ ” Allied Chemical, 449 U.S. at 36, 101 S.Ct. at 191 (citing Calvert, 437 U.S. at 666, 98 S.Ct. at 2559). However, in a footnote, the court implied that in the context of matters committed to the district court's discretion, mandamus relief might be appropriate in rare circumstances — that is, where the appellate court could hold as a matter of law that the district court clearly abused its discretion. The Court said:
Even if it be appropriate in certain circumstances to use mandamus to review a discretionary order by a trial court, the new-trial order entered in this case would not appear to be a likely candidate. A trial judge is not required to enter supporting findings of facts and conclusions of law when granting a new-trial motion. See Fed.Rule Civ.Proc. 52(a). It cannot be contended with any certainty that the trial court in this case, when entering its oral order granting a new trial, intended to set forth each and every reason for its order. The trial court did note, however, that it had made errors in the admission of certain documentary evidence and that it felt the petitioners had not received a fair trial. Given that the Court of Appeals did not have a complete transcript of the proceedings before it ... and that there could be other unarticulated bases for the new-trial order, it would seem all but impossible for the Court of Appeals to hold as a matter of law that the trial court clearly abused its discretion in entering the new-trial order.
Id. at 36-37 n. 3, 101 S.Ct. at 191 n. 3 (emphasis added).
We believe that, consistent with Calvert and Allied Chemical, the standard for mandamus relief is as the Cajun Electric court set it forth: the remedy is available only in those circumstances where there is a “clear and indisputable abuse of discretion or usurpation of judicial power by the trial court.” Cajun Electric, 791 F.2d at 365. In this regard we note that this statement of the standard for the availability of mandamus relief harks back to language found in numerous opinions of the Supreme Court that predate Calvert and Allied Chemical. See, e.g., Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964) (“The writ is appropriately issued ... when there is ‘usurpation of judicial power’ or a clear abuse of *707 discretion.”) (citation omitted); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (“The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or ‘usurpation of judicial power’ of the sort held to justify the writ in De Beers Consol. Mines v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945).”); Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (“ ‘[Ojnly exceptional circumstances amounting to a judicial “usurpation of power” will justify the invocation of this extraordinary remedy.’ ”) (quoting Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)).
We believe it is instructive, in considering the standard for issuance of a writ of mandamus, to look to In re Ralston Purina Co., 726 F.2d 1002 (4th Cir.1984), in which the Fourth Circuit considered a petition for writ of mandamus directing the district court to vacate .an order declining to sever various plaintiffs’ cases and to transfer the cases as severed to district courts in Georgia and Pennsylvania. The Ralston court discussed Allied Chemical and Calvert, saying that Allied Chemical, adopting the rule in Calvert, “has made it clear that the writ should not issue unless the right of the party seeking mandamus is clear and indisputable, and that clear and indisputable requires considerably more strained circumstances that does a mere abuse of discretion.” Id. at 1005. The Ralston court said that “before the writ should issue in a case in which the matter at hand is entrusted to the discretion of the district court, the district court’s abuse of discretion must amount to a ‘judicial usurpation of power.’ ” Id. (citing Allied Chemical, 449 U.S. at 35, 101 S.Ct. at 190). We are in accord with the sentiments expressed by the Fourth Circuit. When a matter is entrusted to the discretion of the district court, mandamus will not issue absent a clear abuse of discretion amounting to a judicial usurpation of power.
Therefore, in analyzing the petition before us we must determine whether First South has any other adequate avenue to attain the relief it desires and whether First South has shown that its right to the issuance of the writ is “clear and indisputable.” Given that the decision to deny a stay pending appeal is one committed to the discretion of the trial court, a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power.
Before we undertake our analysis of whether mandamus should issue in this case, we must, however, note a significant problem that we confront in our task of considering the instant petition: as far as we can determine, neither First South nor the debtor furnished this panel with the bankruptcy court’s findings of fact and conclusions of law supporting its Super Priority Financing Order. The court’s order, with which we were provided, simply states:
After considering the findings of fact on file herein, together with any all [sic] other findings of fact which may properly be inferred from the pleadings on file herein and from the evidence heard and admitted in connection with the incident Motion, and in light of the conclusions of law on file herein, together with any and all other conclusions of law which are appropriate from said findings of fact:
IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that the Motion for Authority to Incur Secured Debt is in all respects granted and sustained, pursuant to § 364(d) of the Bankruptcy Code.
Super Priority Financing Order at 2. Finding the court’s references to findings and conclusions “on file herein” cryptic, and having uncovered no such findings and conclusions in the mandamus papers submitted to us, we requested that the entire bankruptcy court record in this case be transmitted to this panel. Our search of that record revealed that findings and conclusions were made by the bankruptcy court, *708 consistent with the dictates of the Bankruptcy Rules which make Rule 52 of the Federal Rules of Civil Procedure applicable in contested matters such as relief from automatic stay proceedings. See Bankruptcy Rules 9014 & 7052. Where a court grants a section 364 motion, the setting forth of findings and conclusions, be they in writing or simply dictated into the record, is not only required, but is also prudent. Certainly, the provision to this court by the parties of those findings of fact and conclusions of law would have been similarly prudent.
We note that we are confronted with the same difficulty with respect to the bankruptcy court’s denial of First South’s motion for stay pending appeal. The bankruptcy court’s order denying First South’s stay motion, like the order authorizing the super priority financing, relies only on findings and conclusions “on file herein.” Those findings were not provided to us by the parties. Our review of the bankruptcy court record uncovered the court’s findings and conclusions. Unfortunately, those findings and conclusions provide us with little insight into the reasons underlying the denial of the stay motion since the findings and conclusions relating to the denial of the stay motion are best described as conclusory.
When, having been denied a stay by the bankruptcy court, First South subsequently moved in the district court for a stay pending appeal, that court was confronted with the task of determining the propriety of a stay in an emergency context, without the benefit of the reasons underlying the bankruptcy court’s denial of the request for a stay. Thereafter, in its order denying First South’s motion for stay pending appeal, the district court failed to set forth its reasoning, making only conclusory findings. We find this to be particularly problematic given the harsh and potentially final consequences to First South of a denial of a stay pending appeal of the section 364 order. We believe that, when a district court denies a stay pending appeal of an order authorizing a super priority lien under section 364, it must set forth its reasons in more than conclusory terms. Adherence to this practice will ameliorate the problem we face today; as we undertake our consideration of First South’s petition for mandamus relief, we are unfortunately provided with little guidance and left with the task of reviewing the entire record in this case.
B.
1.
We commence our analysis of whether mandamus should issue in this case by recognizing that under the authority of this court’s decision in National Bank of Commerce v. Barrier (In re Barrier), 776 F.2d 1298 (5th Cir.1985), mandamus is the only remedy available to First South, a creditor seeking relief from the district court’s denial of a stay pending appeal of the bankruptcy court’s Super Priority Financing Order. In Barrier, a creditor appealed from the district court’s denial of a stay pending appeal of the bankruptcy court’s order confirming a plan of reorganization.
Following the lead of the Ninth Circuit in In re Teleport Oil Co., 759 F.2d 1376 (9th Cir.1985), we held that mandamus was the only remedy available in the case. See Barrier, 776 F.2d at 1299. In drawing that conclusion, we noted that jurisdiction over the appeal did not exist under 28 U.S.C. § 158(d), which provides that the court of appeals exercises jurisdiction of “appeals from all final decisions, judgments, orders, and decrees” of the district courts in bankruptcy matters, because the district court’s decision to deny a stay pending appeal was not a final order. See Barrier, 776 F.2d at 1299. Additionally, we found that we could not review the district court’s denial of a stay pursuant to 28 U.S.C. § 1292, governing interlocutory appeals, because the bankruptcy appellate scheme in 28 U.S.C. § 158 clearly supersedes 28 U.S.C. § 1291, and, by inference, also supersedes section 1292.[9] See Barrier, 776 F.2d at 1299. *709 Therefore, First South has no avenue, other than mandamus, to attain the relief it desires.
2.
Whether First South has shown that it has a clear and indisputable right to the issuance of the writ is a closer question, but one that we believe is answered in the affirmative.
In assessing the propriety of the district court’s decision to deny a stay pending appeal of the bankruptcy court’s Super Priority Financing Order, we note that the district court’s decision to grant or deny a stay pending appeal rests in the discretion of that court. However, the exercise of that discretion is not unbridled but rather, the court must exercise its discretion in light of what this court has recognized as the four criteria for a stay pending appeal. Cf. Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir.1974) (considering a preliminary injunction). The four criteria are: (1) whether the movant has made a showing of likelihood of success on the merits;[10] (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. See, e.g., Ruiz II, 666 F.2d at 856.
Having reviewed the extensive testimony adduced and exhibits introduced at the four days of hearings relating to the debtor’s Super Priority Financing Motion, as well as the papers submitted in support of and in opposition to the petition for writ of mandamus, we are convinced that, in denying First South’s motion for a stay pending appeal, the district court clearly abused its discretion, such that it amounts to a judicial usurpation of power. We need focus only on the question of First South’s likelihood of success on the merits to draw that conclusion in the circumstances of this case.[11]
Our discussion of the likelihood of success on the merits must begin with a review of the requirements of section 364(d) of the Bankruptcy Code. Section 364(d) provides:
(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
(A) the trustee is unable to obtain such credit otherwise; and
(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.
*710 11 U.S.C. § 364(d). The term “adequate protection” is not defined in the Bankruptcy Code. Section 361 of the Code lists three examples of how adequate protection, as required under Code sections 362, 363 and 364, may be provided:
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity’s interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity’s interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.
11 U.S.C. § 361. As one court recently noted with respect to adequate protection: “Its application is left to the vagaries of each case ... but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.” In re Becker Indus., 58 B.R. 725, 736 (Bankr.S.D.N.Y.1986) (citations omitted); see also Martin v. Production Credit Assoc. (In re Martin), 761 F.2d 472, 474 (8th Cir.1985). Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected. Our view of this case convinces us that our analysis begins, and ends, with a discussion of the bankruptcy court’s finding that First South is adequately protected, a finding that necessarily underlies its decision to authorize super priority financing under section 364(d).
The bankruptcy court concluded that the interest of the existing lien holders or claimed lien holders in the office building was adequately protected, finding that the debtor “has demonstrated that the existing lien holders and creditors of [the debtor’s] estate will be adequately protected by the additional value generated from the completion of the Office Building over and above the money spent to complete the same.” In re Sabine Dev., (Bankr.E.D.Tex. Mar. 9, 1987) (findings of fact and conclusions of law supporting Super Priority Financing Order) at 5 [hereinafter referred to as “Findings”]. The court found that “[t]he completion of the Office Building as contemplated by the terms of the Loan Documents is reasonably expected to preserve, improve and enhance the value of the assets of Sabine and to preserve, improve and enhance the relative position of the creditors of Sabine.” Id. Additionally, the court made the following finding:
Based on the testimony of Dr. Terry Grissom [and relevant exhibits], prior to the expenditure of $2,000,000 the value of the property is approximately $7,500,-000, and after the expenditure of the $2,000,000 the value of the property is $8,500,000. Based on the expert testimony of Lloyd L. Hayes [and relevant exhibits], after the expenditure of the $2,000,000 the value of the property is in excess of $9,500,000.
Id. It is apparent that in concluding that First South would be adequately protected by “the additional value” that would be generated from the completion of the building, the court must have credited Hayes’s valuation testimony.[12]
*711 Before considering the court’s determination that First South would be adequately protected, we note that while a bankruptcy court’s conclusions of law are freely reviewable on appeal, a bankruptcy judge’s findings of fact must be accepted unless they are clearly erroneous. See, e.g., Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.), 622 F.2d 709, 713 (5th Cir.1980). “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Several courts considering the issue have concluded that the question of adequate protection is a fact question and the finding that a party is adequately protected is thereby insulated by the clearly erroneous rule. See, e.g., Bray v. Shenandoah Fed. Savings & Loan Assoc. (In Re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir.1986); In re Martin, 761 F.2d at 474; Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.), 727 F.2d 1017, 1019 (11th Cir.1984). But see, e.g., Philadelphia Consumer Discount Co. v. Commercial Credit Business Loans, Inc. (In re Philadelphia Consumer Discount Co.), 37 B.R. 946, 949 (E.D.Pa.1984); In re Schaller, 27 B.R. 959, 962 (W.D.Wis.1983). Whether we agree with the proposition that adequate protection is a finding of fact, reviewed only under the narrow “clearly erroneous” standard, is not a question we need consider here. Even under the narrow review standard applied to fact-findings, we must conclude, for the reasons discussed below, that it is highly probable that the district court will find, in disposing of First South’s appeal, that the bankruptcy court’s determination that First South would be adequately protected is clearly erroneous, having no support in the record.
All of the testimony presented on behalf of the debtor regarding projections for the office building, including the testimony of Lloyd Hayes, upon which the court apparently relied, proceeded on the premise that the building would be operated as a part of a “complex” with the hotel and garage.[13] The authorization of the $2 million super priority lien was based on projections, offered in testimony and exhibits, that presupposed the operation of the office building on a consolidated basis with the hotel and garage. Notwithstanding the fact that the terms and feasibility of a plan to operate those presently separate entities on a combined basis would have a significant impact on the debtor, no showing was made as to what the terms of such a consolidated enterprise would be or of the feasibility of such a consolidated enter *712 prise. The numbers (i.e. value, income) offered by those called by the debtor to testify were, then, based on assumptions that are not supported in the record.
A brief review of the evidence adduced at the hearings makes this point clear. We begin by considering the testimony offered by Lloyd Hayes and the exhibits introduced in conjunction with that testimony. During the course of his testimony, Hayes discussed several documents, introduced as exhibits into evidence, that were prepared by Hayes and his staff. Those exhibits are the “numbers” of the Waller Creek Plaza Hotel, Garage and Conference Center — the conference center being the office building that is the subject of the Chapter 11 proceeding with which we are presently concerned. Of particular significance are Hayes’s projections that, with the infusion of the $2 million proposed loan to complete the building, the value of the building would increase by more than $2 million to over $9.5 million. This value estimate goes directly to the question of adequate protection raised under section 364. In our view, the problem is that the projections offered by Hayes assumed a “consolidated” enterprise of the hotel, conference center and garage — that is, they are based on the assumption that the building would be operated in conjunction with the hotel and garage. Indeed, with regard to his projections, Mr. Hayes stated, “mine includes the whole facility, the hotel and garage.” I Record at 126 (Dec. 19, 1986).
In a similar vein, Dr. Terry Grissom, the debtor’s expert appraisal witness, made clear that he considered the best use of the building to be as a hotel/convention center with the building tied to the hotel. Indeed, Grissom’s appraisal of the value of the building was based on the assumption that a conversion to hotel/convention center use would take place. Grissom testified that the value of the building as it stands today, assuming the conversion to a hotel/convention center, is $7.5 million. With the infusion of the proposed $2 million super priority loan, the fair market value of the building would, according to Grissom, be $8.5 million. Grissom testified that, although he had not appraised the value of the building as a separated office tower, he could say that if the office building was separated from the hotel and garage and then put up for sale, the value of the property would be lower than the value assuming conversion to the hotel/convention center. Grissom also questioned whether the building could survive on its own.
Also testifying for the debtor was Charlotte St. Martin, Regional Vice-President of Sales and Marketing for Loews Hotels. St. Martin had been asked to do a marketing plan for Waller Creek Plaza, which plan was introduced into evidence. The marketing plan treats the hotel and building as a unit. In response to a question posed to her by counsel for First South about her prediction of the potential for Waller Creek as a conference center, St. Martin said:
I want to point out that I look at this as one project and that’s the way I was asked to look at it. When I went into it I didn’t know there was any separation, and especially with the co-mingling of function space, meeting space, ballroom space, and restaurant facilities, they appeared to me as one project and that’s the way I looked at it.
I Record at 154 (Dec. 16, 1986). Having noted this caveat, St. Martin concluded that Waller Creek “has the potential of being the upscale conference facility in Austin downtown area.” Id. Throughout her testimony, St. Martin emphasized that she was always speaking in terms of a consolidated project. For example, she said, “everything I’m saying involves the whole project because that’s the way I evaluated it. I would have a totally different evaluation if I was just looking at the one building.” Id. at 169. St. Martin testified that she could evaluate the building as a separate entity but “[i]t might not be positive.” Id. However, with the conversion to a conference center, her assessment was that the project, as a whole, would be successful. Id. at 172.
Further undermining the testimony is the fact that the projection testimony (and the bankruptcy court’s findings) assumed that the building could, and would, be completed and operational. In this regard, we *713 note that at oral argument on the instant petition, we were informed that there is no contract for the completion of the building and there is no completion bond. The evidence adduced at the hearings also fails to support the assumption that the building will, in fact, be completed. Thus, in all likelihood the testimony will be disregarded on appeal because its fundamental condition simply is not supported in the record.
Hence, our review of the transcripts convinces us that a serious problem exists because the testimony upon which the bankruptcy court relied in finding that First South would be adequately protected and thereby, in authorizing the super priority financing, may well rest on assumptions unsupported in the record. This, however, is not the only problem that we see. Rather, we find it also problematic that the assumptions upon which the testimony was grounded — particularly the assumption that the project would be operated on a consolidated basis — seem to us to be the kind of assumptions that are usually part of a plan of reorganization. Indeed, implicit in all that happened here was the notion that there was a plan in the background. The $2 million super priority financing was “sold” to the bankruptcy court as, in effect, part of a plan to operate the building as part of a consolidated enterprise — that is, a hotel/convention center/garage. It is clear from the statements of the lawyers for the debtor and of Mr. Hayes himself that the use of the funds from the proposed super priority financing is part of an underlying plan that has yet to be proposed.
For example, counsel for the debtor, in explaining to the bankruptcy court the theory behind the debtor’s defense to First South’s motion to lift the automatic stay, said:
[T]he debtor has a plan, what we believe is a feasible plan that — the feasibility of which we want to demonstrate to the Court which would be to take the office, the building and convert additional floors into hotel room space because it is adjoining another hotel. The hotel already had 30 to 40 percent of the building. We would propose to take the rest of it for the hotel. We have experts here who will demonstrate that by doing that that we can increase dramatically the value of the property____
Record at 123-24 (Sept. 9, 1986). In response to the court’s questioning, the debt- or’s lawyer said that the $2 million super priority loan would be used to carry out that plan. Id.[14] At a later hearing, First *714 South objected to the admission into evidence of documents prepared by Mr. Hayes and his staff regarding projections of income and expenses from a hotel operation and of the value of the building. The objection was based on the ground that the documents reflect opinions and, under the Federal Rules of Evidence, only experts may provide opinion testimony. In support of his request that Mr. Hayes be qualified to testify as an expert, counsel for the debtor argued that “this is [Hayes’s] plan that he believes will be presented to the Court for the building.” I Record at 46 (Dec. 19, 1986).
In these circumstances, we think it likely that the district court will conclude that it was error for the bankruptcy court to consider the testimony offered on behalf of the debtor as the basis for authorizing the super priority financing. Where the estimates that form the basis of the bankruptcy court’s finding that First South would be adequately protected are grounded on assumptions that appear to be part of an overall plan of reorganization whose terms are not disclosed and which obviously has not yet been tested under the standards applicable to plans, it would be error for the bankruptcy court to rely on such evidence.[15] There are no assurances that such a plan would be feasible or confirmable.
If that evidence is taken out of consideration, there is no evidence to support the bankruptcy court’s authorization of super priority financing under section 364(d). The only evidence remaining is that provided by First South’s expert, Gerald Teel, and that evidence would not support the bankruptcy court’s decision — which must rest on a finding that First South would be adequately protected — to authorize the super priority financing.[16]
There is, then, a likelihood that First South will succeed on the merits of its appeal of the bankruptcy court’s Super Priority Financing Order. In the circumstances of this case, we find that the district court’s decision to deny First South’s motion for a stay pending appeal of the Super Priority Financing Order was a clear abuse of discretion amounting to a judicial usurpation of power.[17] Thus, not only does First South have no other adequate means to attain the relief it desires, but it has also shown that its right to the issuance of the writ of mandamus is clear and indisputable.
Adding further support to our disposition of this mandamus petition is the fact that this court in Barrier took the same action that we find necessary today — issuing a limited mandamus requiring the district court to enter a stay pending appeal of a bankruptcy court order and requiring the district court promptly to hear the merits of the appeal. See Barrier, 776 F.2d at 1298-99. Underlying the dispute in Barrier was a bankruptcy court’s order confirming the debtor’s plan of reorganization.
Notwithstanding the fact that mandamus is a “drastic” remedy, we found it warrant *715 ed in the circumstances of the Barrier case. See id. at 1299-1300. The Barrier case was "extraordinary” because: (1) there was no other avenue of appeal available to the creditor; (2) there was a “serious potential for irreparable harm in the absence of a stay”; and (3) the district court and the bankruptcy court abused their discretion in denying a stay pending appeal. Id.[18]
We believe that the case before us is at least as “extraordinary” as the Barrier case. Thus, under the authority of Barrier, as well as other authority of this circuit and the Supreme Court, we now issue a limited mandamus requiring the district court (subject to the resolution of the mootness issue referred to in Part IV infra) to issue a stay of the bankruptcy court’s Super Priority Financing Order and requiring the district court to hold an expeditious hearing on the merits of the appeal of that order. There is no other avenue of relief available to First South, there is a serious threat of irreparable harm to First South, and, for the reasons outlined above, we find a clear abuse of discretion by the district court in denying First South’s motion for a stay pending appeal.[19]
IV.
On June 16, 1987, the debtor filed a motion to dismiss this mandamus petition on the ground that the petition was moot. The debtor stated that “[sjince September, 1986, several changes in circumstances have developed which would preclude the Debtor from concluding its Super Priority motion. The Debtor is withdrawing its Super Priority Motion, as previously approved, at this time.” In the debtor’s view, the proposed withdrawal of the Super Priority Motion moots out the mandamus petition.
The debtor’s motion to dismiss appears to have come as a surprise to First South, and First South filed a response opposing the motion to dismiss. According to First South, “the Debtor’s statement that it is withdrawing the Motion for Super-priority Financing does not necessarily moot this appeal, does not mean that the Debtor will actually file said withdrawal, and does not require that the lower court grant an order vacating the prior order.” First South also suggests that the debtor’s motion is disingenuous, being motivated by a desire to avoid an unfavorable ruling from this court.
*716 We checked the docket sheets of the district court and the bankruptcy court and were unable to identify any filings by the debtor that would moot the appeal of the bankruptcy court’s Super Priority Financing Order and thereby relieve us of the duty of deciding the instant mandamus petition. We recognize, however, that docketing delays or other reasons may explain the apparent absence of any such filings by the debtor. Accordingly, we direct the district court to determine, before issuing the stay, whether, in fact, the appeal pending before it has been mooted. If so, the appeal should be dismissed with instructions to the bankruptcy court to consider the advisability of sanctions against the debtor.
V.
On the basis of the foregoing, it is ORDERED that a limited mandamus issue, requiring the district court to determine whether the appeal pending before it is moot and, if not, to enter a stay of the bankruptcy court’s Super Priority Financing Order pending appeal to the district court, and requiring the district court to expeditiously hear such appeal. Since the case has already been fully briefed, the appeal should be disposed of by the district court promptly. Any appeal from the district court’s judgment will be to this panel and will also be expedited. The mandate shall issue forthwith.

. We note that the debtor has filed an adversary action against First South asserting, among other things, the invalidity of First South's $10 million lien. That adversary action is presently pending in the United States District Court for the Eastern District of Texas.
The second lien on the office building is held by the City of Austin in the principal amount of $833,000. The debtor had hired H.B. Zachry Company ("Zachry") as the general contractor for the office building (as well as for the adjacent hotel and garage). Zachry and other mechanic’s and materialmen's lien creditors have not been paid and have filed approximately $2.5 million in lien claims against the office building and, in some cases, against Lloyd Hayes. The debtor is contesting the validity of the mechanic’s and materialmen's liens and does not believe that they exceed $1.7 million. Total asserted liens on the office building — First South’s, the City of Austin’s, and mechanic’s and materialmen’s liens — exceed $14,114,000.

. The debtor seems to dispute this characterization of the proposed use of the funds, contending that ”[a]pproximately, fifty percent (50%) of the office building is already finished out as a hotel and leased to the Waller Creek Plaza Hotel ("Hotel”). The remaining five (5) floors of the building are vacant. Part of the remaining five (5) floors had originally been approved for use as penthouses and apartments. Therefore, Sabine's completion of the 9th and 10th floors as hotel suites does not change the use of those floors from what was originally envisioned. The remaining three (3) floors would remain as office space.” Response to Petition for Writ of Mandamus or in the Alternative Motion for Stay Pending Appeal at 2-3. According to the debtor, the completion of the 9th and 10th floors as hotel suites “will only carry out the original concept for the building.” Id. at 3.

. The debtor contends that Teel’s testimony did not, in fact, reflect that the value of the office building decreased in value since the filing of the bankruptcy petition. Rather, argues the debtor, the fact that the value of the office building is lower in Teel’s updated appraisal than in his original appraisal (dated July 29, 1986) simply reflects that Teel changed the assumptions upon which he relied in his original appraisal.

. The second lienholder, the City of Austin, does not object to the super priority financing. Zachry, the alleged third lienholder, does object to the super priority financing.

. The bankruptcy court further ordered that the debtor file its plan of reorganization and disclosure statement within thirty days. To the knowledge of this court, no plan has been filed as of the date of this opinion.

. Section 364(e) provides:
The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.
11 Ü.S.C. § 364(e).

. First South argues further that the granting of the super priority lien "will deteriorate all lien holders [sic] position drastically and completely *705 change the entire nature and character of the asset involved in this proceeding and any potential reorganization." Memorandum in Support of Petition for Writ of Mandamus, or in the Alternative Motion for Stay Pending Appeal at 27.

. First South, in its mandamus petition, allows that "this Court may condition the granting of a stay pending appeal on First South committing to fund the $2 million on the same terms and conditions as set forth in the loan commitment” if the Fifth Circuit affirms the bankruptcy court’s order approving the super priority financing. Mandamus Petition at 21.

. Additionally, we rejected the appellant’s request that we grant a stay under Federal Rule of *709 Appellate Procedure 8(a) because the rule, only authorizing stays pending appeal to this court, did not apply where, as there, no appeal was pending from the district court to this court. See Barrier, 776 F.2d at 1299.

. In Ruiz I, 650 F.2d 555 (5th Cir.1981), we stated that "on motions for stay pending appeal the movant need not always show a ‘probability’ of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.” Id. at 565. In Ruiz II, 666 F.2d 854 (5th Cir.1982), we cautioned against reading Ruiz I as "a coup de grace for the likelihood-of-success criterion in this circuit." Id. at 856. We said: "Likelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only 'if the balance of equities (i.e. consideration of the other three factors) is ... heavily tilted in the movant’s favor' will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit.” Id. at 857 (quoting Ruiz I, 650 F.2d at 565-66) (emphasis added by Ruiz II court).
Since we believe that the more stringent likelihood of success on the merits standard is satisfied here, we need not decide if this is an "unusual” case such as to warrant a stay in the absence of a likelihood of success.

. While it is unnecessary for us to address the second criterion for stay pending appeal— whether First South has shown that it will suffer irreparable injury if the stay is not granted— we do note the significance of the fact that, under the express provisions of the Bankruptcy Code, an appeal of the bankruptcy court’s Super Priority Financing Order would likely be rendered moot. See 11 U.S.C. § 364(e) (quoted in note 6 of this opinion).

. We note that the bankruptcy court also made the following statement:
The Debtor’s stipulation and the testimony by Dr. Terry Grissom and Gerald Teel both demonstrate that there is no equity in the *711 property over and above the first lien indebtedness. The testimony of Andrew Ramirez demonstrated that there is equity in the property over and above the first lien indebtedness.
Findings at 5. The court did not resolve what it seems to have identified as a dispute in the testimony in the findings and conclusions supporting the Super Priority Financing Order. However, in the findings of fact and conclusions of law on First South’s Motion for Relief from Stay, the court found that there is no equity in the property.

. The testimony of one witness, Andrew Ramirez, could be seen as an exception to this general statement. Ramirez, a developer, owns a building known as the Avante Plaza, located three blocks from the debtor's building. Avante Plaza was used as a comparable in Teel’s appraisal of the debtor’s office building. In the week preceding the hearing at which he testified, Ramirez had agreed with the City of Austin on a price for a lease/purchase of approximately 60,000 square feet of Avante Plaza. The agreed-upon price per square foot was $160. Ramirez testified that the effective net rental per square foot in Avante Plaza was therefore $19 per square foot. According to Ramirez’s testimony, Avante Plaza is increasing in value.
In their closing statements at the end of the final day’s hearing, the lawyers for the debtor relied heavily on Ramirez’s testimony as establishing that the debtor’s office building was not declining in value and apparently, as providing a more accurate (and higher) valuation of the debtor’s building than had the expert appraisers. While Ramirez did testify that the value of his own building had increased and that the transaction negotiated for his building was at $160 per square foot, Ramirez at no point testified about the value of the debtor’s building. Further, no witness tied Ramirez’s testimony about the value of his building following the transaction with the City of Austin into the value of the debtor’s office building.

. An interchange between the debtor’s lawyer and the court is illuminating:
THE COURT: All right. When do you expect to have this plan filed and have in position to vote on?
MR. RAMSEY: With regards to the — we can do that on short order, Your Honor. We are — with regards to the lien and construction, we wanted to get construction started as soon as possible. That’s why we filed a 364(d) motion, Your Honor, in order to get the construction started. Once we could get the money, get the construction started, then our next step is to do the plan of reorganization, Your Honor, which would encompass that—
THE COURT: What if that doesn’t float at all? What if you can’t get anymore money— the Court refuses to put the super lien on it?
MR. RAMSEY: Your Honor, then we would propose to do — why don't we just do this? We will do — we’ll submit the plan ASAP within as quick as we can incorporating, hopefully, most of it. We can do it either way, Your Honor. We’d like to go ahead and get construction started (indiscernible) on the financing and we will propose, regardless of how you rule on that, we would propose to do the plan quickly, Your Honor, go ahead and submit it. I think that it can be done — the best way is with the additional financing, but we could do it otherwise. It would not be as good, I don’t think, for the property. I think we can really demonstrate that the two million would be well spent, Your Honor, and yield many fold what the two million is going to cost.
Record at 125-126 (Sept. 9, 1986). Later in the same hearing, the lawyer for First South and Mr. Hayes engaged in the following exchange:
Q Do you now have an idea as to what a plan would entail?
A We’re close to having a plan.
, Q The fact of the matter is you’re not close to having a plan. All you have is some grand ideas that you've come up with since the time of your deposition.
A My co-counsel are working on some briefing right now in Austin, Texas to — we're going to come up with a plan pretty shortly.
Q Do you want to enlighten us as to what that briefing is about?
A I haven’t gotten the results of it.
*714 Q Do you want to enlighten us what the plan is all about?
A I told you — I may be wrong, but I didn’t think the purpose of this was for the plan. The plan will be to make it a viable project to pay my creditors and to finish the building.
Record at 142-43 (Sept. 9, 1986).

. This is not to say that super priority financing is only proper in the context of a plan. The problem arises in this case because the testimony shows that the dispositive projections are based on assumptions that are part of an undisclosed plan of reorganization that obviously has not been subjected to the standards applicable to plan confirmation. Additionally, we note that the super priority financing in this case, as clearly part of an underlying plan, will significantly affect the terms of any plan that may be proposed in the future. Cf. Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines), 780 F.2d 1223 (5th Cir.1986); Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935 (5th Cir.1983).

. For the reasons discussed supra at note 13, it is unlikely that Ramirez’s testimony will be held to provide the necessary support for the court’s Super Priority Financing Order.

. Because of our view of the bankruptcy court's finding on adequate protection, we need not consider the court’s finding that the debtor could not obtain credit elsewhere.

. In explaining our view of the case, we noted:
The debtor’s plan of reorganization as confirmed by the bankruptcy court provides that he will remain in business as a farmer, cultivating two farms and paying off secured debts owed for the land and his farm equipment. He is permitted to borrow money in the ordinary course of his farming operations or to secure loans for payments required by the plan. Additionally, the debtor has agreed to transfer to its major secured bank creditor two farms free and clear of liens. The unsecured creditors will receive virtually nothing from the plan as confirmed, despite its considerable advantages to Barrier, for even if attorneys’ fees and other costs do not exceed present estimates, the distribution to unsecured creditors will amount to less than .2% of the unsecured debt. NBC’s understandable concern is that the bank may sell those repossessed farms or the debtor may borrow money or dispose of his property inconsistently with the terms of the plan pending appeal of this confirmation order and may thus effectively undermine the utility of NBC's appeal. Without the relief granted here, and the imposition of a stay, the debtor’s financial position could deteriorate drastically vis-a-vis his ability, if necessary, to propose another plan. These eventualities pose a serious risk of harm to NBC from the failure to grant a stay. The district court and bankruptcy court, in refusing to award a stay pending appeal, seriously erred in their determinations of (1) the risk of harm to NBC and (2) the gravity and merit of its legal position on appeal.
Barrier, 776 F.2d at 1299-1300.

. The Ninth Circuit, in the context of dismissing an appeal from the district court’s denial of a stay pending appeal of the bankruptcy court’s appointment of a trustee, noted that "mandamus jurisdiction is available to review a district court’s denial of a stay in those extraordinary cases where a bankruptcy appellant in the district court is threatened with irreparable harm and there are no other means, including the eventual appeal, to protect himself from this harm.” Teleport, 759 F.2d at 1378 (citing Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977)). The Teleport court found, however, that even if it could construe the appeal before it as a petition for mandamus relief, that relief would be inappropriate because the appellant had not shown a threat of irreparable injury. Teleport, 759 F.2d at 1378.