In re ASHEVILLE BUILDING ASSOCI-
ATES, a Texas Limited Partnership,
Debtor–Appellant,

v.

CARLYLE REAL ESTATE LIMITED
PARTNERSHIP, VIII, Appellee.

Bankruptcy No. A–B–88–1026–BKR.
No. A–MISC.–956.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 29, 1988.

Larry K. Hercules, Dallas, Tex., for Asheville Bldg. Associates.

Joseph U. Schorer, Mayer, Brown & Platt, Chicago, Ill., for Carlyle Real Estate Limited Partnership—VIII and JMB Property Management Co.

James Gary Rowe, Asheville, N.C., for Carlyle Real Estate Ltd. Partnership–VIII.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Asheville Building Associates' Emergency Motion for Stay of Order Pending Appeal, filed September 22, 1988. For the reasons that follow, Asheville Building Associates' motion will be denied.

## BACKGROUND

The following facts appear from a stipulation entered into between appellee, Carlyle Real Estate Limited Partnership, VIII ("Carlyle"), and appellant, Asheville Building Associates ("ABA"), filed August 18, 1988:

On November 15, 1985, Carlyle executed a Deed of Trust ("the Carlyle Deed of Trust") with respect to an eighteen story office building known as the Northwestern Bank Building and Parking Garage ("the Property"), which is located in Asheville, North Carolina. On that same day Carlyle also executed a note, with a face amount of three million dollars ($3,000,000.00) ("the Carlyle Note") in favor of Northwestern Bank. Also on that same day, Carlyle sold the Property to ABA subject to both the Carlyle Note *and* the Carlyle Deed of Trust; ABA executed a Deed of Trust (the "ABA Deed of Trust") and a Note, with a face amount of 6.5 million dollars ($6,500,-000.00) (the "ABA Wrap Note") in favor of Carlyle. Since the time of these above-described transactions, Northwestern Bank has become, by merger, First Union National of North Carolina ("First Union").

Under the terms of the ABA Deed of Trust, all rents and royalties generated by the Property were assigned to Carlyle. On January 27, 1988, Carlyle perfected its interest in such rents and royalties.

The Property is ABA's only asset, and ABA's only business is to own and rent the Property.

During 1987, ABA was periodically in default under its obligations under the

ABA Wrap Note, and it was been continuously in default of its obligations under the ABA Wrap Note since November 7, 1987. During 1987, after ABA failed to make payments on the ABA Wrap Note, Carlyle twice began foreclosure proceedings but dismissed both foreclosure actions because ABA brought its payments current. On December 15, 1987, in Superior Court, Buncombe County, North Carolina, Carlyle again initiated foreclosure proceedings against the Property. On January 27, 1987, the Superior Court appointed JMB Property Management Company ("JMB") to be receiver of the Property, and now JMB, as receiver pursuant to a consent decree, is collecting rents and revenues generated by the Property. On February 1, 1988, notice was issued setting a foreclosure sale for February 22, 1988, at noon.

On February 22, 1988, the same date that the foreclosure sale was to take place, ABA filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, a petition for relief under chapter 11 of the United States Bankruptcy Code. On April 26, 1988, venue for the chapter 11 bankruptcy proceeding was transferred to this District.

The following additional background facts appear from this Court's review of the entire record designated by appellant, with the exception of transcripts of the bankruptcy court's proceedings; such transcripts have not been ordered or produced, and they, therefore, do not exist.

Since the filing of the chapter 11 petition, ABA has not filed a plan of reorganization, nor has ABA been granted an extension of the exclusivity period set forth in Section 1121(b) of Title 11, United States Code.

The filing of the chapter 11 petition automatically stayed the foreclosure proceedings, pursuant to Section 362 of Title 11, United States Code. On July 11, 1988, Carlyle filed a motion, pursuant to Section 362(d) of Title 11, United States Code, seeking relief from the automatic stay in order to proceed with its foreclosure action. On July 12, 1988, the Honorable George R. Hodges, United States Bankruptcy Judge, entered an order directing ABA to respond to Carlyle's motion for relief from automatic stay; a preliminary hearing on Carlyle's motion was set for July 21, 1988, and a final hearing was set for August 1988.

On July 21, 1988, Judge Hodges conducted a preliminary hearing on Carlyle's motion for relief from the automatic stay. On that day a consent order was entered continuing the preliminary hearing and scheduling the final hearing for August 17, 1988.

On August 17, 18, and 19, 1988, Judge Hodges presided over final hearings on Carlyle's motion for relief from the automatic stay. Attorney Larry K. Hercules, of Dallas, Texas, appeared on behalf of ABA; Ellison T. Starnes, the sole general partner of ABA and owner of ninety percent (90%) of ABA, was also present at the final hearing. Attorney James Gary Rowe, of Asheville, North Carolina, and his associate, Mr. Brondyke, appeared on behalf of Carlyle. Joseph U. Schorer, of Chicago, Illinois, appeared on behalf of both Carlyle and JMB Property Management Company. In addition, over the objections of Carlyle, Albert L. Sneed, Jr., of Asheville, North Carolina, appeared on behalf of two banks, (1) Central National Bank of Sterling, Illinois, and (2) Texas National Bank, of Houston, Texas, each having security interests in the limited partnership and general partnership of Mr. Starnes; Mr. Sneed also appeared on behalf of the trustees of the Imperial Palace Pension Fund, who are ordinary creditors secured by a pledge of the limited partnership. David G. Gray, of Asheville North Carolina, appeared on behalf J.M. Westfall & Company, an unsecured creditor of ABA.

Several witnesses testified at the final hearing, and numerous exhibits were introduced into evidence. On August 19, 1988, after hearing and considering all of the evidence and the arguments of counsel, Judge Hodges announced his decision. On August 31, 1988, Judge Hodges entered a thirteen (13) page order memorializing his decision, which modified the automatic stay and permitted Carlyle to foreclose and sell the Property, subject to the Bankruptcy Court's final approval; Judge Hodges specifically retained jurisdiction over the mat-

ter in order to approve or disapprove any sale of the Property, and he specifically conditioned his order upon Carlyle's advertising the Property for sale in the *Wall Street Journal* in accordance, at a minimum, with the provisions of the North Carolina General Statutes relating to foreclosure sales.

In his written order of August 31, 1988, Judge Hodges made numerous findings of fact and conclusions of law, which can be summarized, in pertinent part, as follows:

Carlyle is ABA's only secured creditor, and ABA now owes Carlyle approximately seven million, two hundred thirty-seven thousand, nine hundred forty-five dollars ($7,237,945.00). ABA owes its unsecured creditors approximately one hundred twenty thousand dollars ($120,000.00).

Shortly after ABA purchased the Property, ABA began to experience financial difficulties, which caused ABA to defer necessary maintenance, amounting to approximately four hundred thousand dollars ($400,000.00). Since 1985, the Property has deteriorated, and the Property's major problems, which are outlined in Judge Hodges order of August 31, 1988, will continue to cause deterioration if they are not corrected. The building manager for the Property has been unable to obtain maintenance funds from ABA, and many essential service vendors have discontinued their services because they have not been paid. During ABA's ownership, the occupancy rate of the Property has decreased ten percent (10%), from ninety percent (90%) to eighty percent (80%).

A professional appraiser retained by Carlyle, Thomas Steitler, conducted an appraisal of the Property by three accepted valuation methods: (1) cost, (2) market, and (3) income. Mr. Steitler's appraisal resulted in three values: (1) Cost approach, 6.42 million dollars ($6,420,000.00); (2) Market approach, 6.63 million dollars ($6,630,000.00); and (3) Income approach, 6.05 million dollars ($6,050,000.00). Mr. Steitler concluded that the income approach best approximated the value of the Property. ABA did not offer its own appraisal of the Property, but Mr. Starnes did testify, without any relevant support, that the Property is worth nine million dollars ($9,000,000.00).

Carlyle now has a written agreement with a group of people, including some of the largest tenants of the Property, providing for a *cash* sale of Property for 6.84 million dollars ($6,840,000.00). The agreement, which is contingent upon relief being obtained from the automatic stay, also provides that ABA's unsecured debts, which amount to approximately one hundred twenty thousand dollars ($120,000.00), will be paid from the proceeds of the sale.

As of August 17, 1988, ABA's only efforts to sell the Property involved inquiries about a plan to auction the Property via satellite to one hundred and fifty thousand potential pre-qualified buyers situated in such exotic locations as Tokyo, Zurich, London, and Frankfurt, as well as somewhat more mundane locations in the United States and Canada. Judge Hodges characterized this proposed plan as an unrealistic, fanciful, "Star Wars" marketing scheme.

Judge Hodges concluded that the circumstances described above warrant relief from the automatic stay because ABA does not have equity in the Property and such Property is not necessary to an effective reorganization, 11 U.S.C.A. § 362(d)(2)(A), (B) (West 1979 & Supp.1988). In addition, Judge Hodges concluded, as an alternative ground for decision, that the automatic stay should be modified because these circumstances constitute "cause," *id.* § 362(d)(1).

On September 7, 1988, ABA filed a notice of appeal seeking to appeal Judge Hodges' August 31, 1988 order to this Court. On that same day, pursuant to Rule 8005 of the Federal Bankruptcy Rules, ABA filed a notice in the Bankruptcy Court seeking a stay of Judge Hodges' August 31st order. On September 8, 1988, Judge Hodges entered an order denying ABA's motion for a stay pending appeal. On September 19, 1988, pursuant to Rule 8006 of the Federal Bankruptcy Rules, ABA filed Appellant's Designation of Record and Statement of Issues, in which ABA identified nineteen separate issues it wishes to raise on appeal. This Court has carefully reviewed all nineteen issues identified by ABA and con-

cludes that ABA is essentially seeking to challenge Judge Hodges' evaluation of the evidence regarding the value of the Property and ABA's reorganization efforts.

On September 22, 1988, ABA filed its Emergency Motion for Stay of Order Pending Appeal, which is now pending before this Court. In the Emergency Motion, ABA asserts that cross-examination at the final hearing revealed serious flaws and deficiencies in Carlyle's retained appraiser's report. In addition, ABA asserts in its Emergency Motion that it and its equity security holders will sustain irreparable harm if the foreclosure sale is allowed to take place pending this Court's review of Judge Hodges' August 31, 1988 order. Finally, ABA correctly points out that if Judge Hodges' order of August 31, 1988 is not stayed, and the foreclosure sale takes place, then ABA's appeal to this Court will be moot, *see* 11 U.S.C.A. § 363(m) (West 1979).

## STANDARD OF DECISION

■ As Judge Hodges noted in his order filed September 8, 1988, the standard of decision this Court must use in determining ABA's Emergency Motion for Stay of Order Pending Appeal was established by the United States Court of Appeals for the Fourth Circuit in *Long v. Robinson,* 432 F.2d 977 (4th Cir.1970); *accord City of Alexandria v. Helms,* 719 F.2d 699 (4th Cir.1983). The *Long* court phrased the standard as follows:

> Briefly stated, a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

*Long v. Robinson,* 432 F.2d at 979; *accord In re Cretella,* 47 Bankr. 382 (E.D.N.Y. 1984); *In re Tolco Properties, Inc.,* 6 Bankr. 490 (Bankr.E.D.Va.1980).

## ANALYSIS

I. *Likelihood of Success on the Merits of the Appeal*

■ When reviewing Judge Hodges' order dated August 31, 1988, this Court will be required to affirm his findings of fact unless such findings of fact are clearly erroneous. This Court fully realizes that the "whole ball of wax" is now at stake; if ABA loses its stay motion, its appeal will be moot. Therefore, this Court has carefully reviewed the record and concludes that Judge Hodges' findings of fact are not clearly erroneous. Instead, Judge Hodges' findings of fact appear to be entirely correct and substantially supported by the record. Since ABA has essentially challenged only Judge Hodges' factual conclusions, this Court concludes that ABA has no realistic possibility of success on the merits.

II. *Irreparable Injury to ABA*

ABA will not suffer any irreparable harm if the stay is not granted because there are several remedies available to ABA. As Judge Hodges noted in his order dated September 8, 1988, ABA can seek to protect the Property's alleged value by bidding at the foreclosure sale or by finding and producing potential bidders at the foreclosure sale. The only harm ABA alleges is loss of equity, which is a monetary injury that is, by its nature, not irreparable.

III. *Substantial Harm to Other Parties*

If this Court stays Judge Hodges' August 31, 1988 order, Carlyle will once again be frustrated in its efforts to sell the Property because the August 31st order allowed Carlyle to proceed with the foreclosure sale despite the automatic stay of Section 362. Carlyle now has a fair and reasonable agreement to sell the Property, and if that agreement comes to fruition Carlyle will benefit, some of the large tenants of the Property will benefit, and ABA's unsecured creditors will benefit. If this Court stays Judge Hodges' August 31st order, Carlyle will be harmed, because it will be forced to absorb, at least, a fifty thousand dollars ($50,000.00) per month loss; the large tenants of the Property will be harmed because they will lose an opportunity to acquire the premises they occupy; the unse-

cured creditors will be harmed because it is unlikely that ABA will have anything to satisfy their claims. From February 22, 1988, until August 31, 1988, ABA had an opportunity to develop a plan of reorganization and had an opportunity to arrange for a realistic disposition of the Property. This Court is of the opinion that it is very unlikely ABA could perform any better if the sale of the Property were delayed.

### IV. *The Public Interest*

ABA has not shown in any way how the public interest would be served by staying Judge Hodges's order dated August 31, 1988, and this Court is of the opinion that there is no public interest to be served by such a stay.

### CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED that Asheville Building Associates' Emergency Motion for Stay of Order Pending Appeal, filed September 22, 1988, is DENIED.