United States Court of Appeals,

Fifth Circuit.

No. 93-3310.

In the Matter of Martin A. SMITH, Jr. and Linda Brightbill Smith, Debtors.

OMNI MANUFACTURING, INC., Appellant,

v.

Martin A. SMITH, Jr. and Linda Brightball Smith, Appellees.

May 27, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WOOD, Jr.,[*] JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this Chapter 11 Bankruptcy case, the bankruptcy and district courts refused to hold that nearly $70,000 owed to Omni was nondischargeable because the debt was not properly scheduled in time to permit Omni to file a proof of claim and Omni had no other notice or actual knowledge of the case. *See* 11 U.S.C. § 523(a)(3). Instead, the courts authorized "for Omni's benefit" an extension of time to file a proof of claim, and they justified the extension under their construction of section 523(a)(3) and alternately of Bankruptcy Code § 105 and Bankruptcy Rules 3003(c)(3) and 9006(b)(1). Neither those statutory provisions and rules nor any case law authority supports what the courts did. We must reverse.

BACKGROUND

---

[*]Circuit Judge of the Seventh Circuit, sitting by designation.

1

The Smiths filed a Chapter 11 bankruptcy proceeding in December 1987. Omni was an unsecured creditor to which Mr. Smith owed approximately $68,000 as a personal guarantor on a failed lease agreement between Omni and St. Charles Health Care Center, Inc. Omni was listed as a creditor but was not included in the debtors' mailing matrix and was thus left out of the ordinary bankruptcy notice loop. Somehow, the debtors also "forgot" to list approximately 60 other creditors until years later. In March 1990, the debtors amended their mailing matrix and added an old, incorrect address for Omni. The debtors could have obtained Omni's correct address from the Atlanta telephone directory, the office of the Georgia Secretary of State, Omni's current telephone number, or from Omni's counsel in New Orleans who had earlier represented the company in dealings with the Smiths.

On April 3, 1990, the bankruptcy court fixed May 11, 1990 as the last day on which proofs of claim or interest could be filed in the debtors' case. Omni received neither this notice; nor the debtors' second amended plan of reorganization; nor the January 3, 1991 order fixing January 30, 1991 as the last day for filing acceptances or rejections of that plan; nor the order confirming debtors' second amended plan which was entered February 7, 1991.

Unaware of the bankruptcy, in March 1991 Omni filed a diversity suit in federal court seeking recovery against the Smiths on their guarantee. On May 7, 1991, counsel for Omni was informed of the bankruptcy proceeding for the first time by means of a letter from the Smiths' counsel. Litigation then ensued in the

2

bankruptcy court, and the court agreed that Omni had neither been "duly scheduled" nor "duly listed" as a creditor in the Chapter 11 case. Further, the court agreed, Omni received no actual or constructive notice or knowledge of the bankruptcy filing until May 7, 1991, four years after it was filed, one year after the deadline to file a proof of claim had passed, and three months after a plan of reorganization had been approved by the creditors. The bankruptcy court found that the debtors could have ascertained Omni's address by simply picking up the telephone and stated, "This court does not condone such a lack of diligence on the part of the debtor." The bankruptcy court did *not* find "excusable neglect" or "due diligence" on the part of the debtors.

Notwithstanding its apparent recognition that the debtors' failure properly and timely to schedule Omni's claim and Omni's total lack of knowledge of the case rendered Omni's debt nondischargeable under section 523(a)(3), the court invoked its "equitable" powers under 11 U.S.C. § 105(a). It refused to declare the debt nondischargeable and instead extended the bar date at the debtors' request in order to "enable" Omni to file a late proof of claim and, if it so desired, to contest the Smiths' discharge or the dischargeability of the indebtedness.

The district court affirmed the § 105 holding and also construed § 523(a)(3) to mean that Omni's debt was discharged despite lack of notice of the case because the bankruptcy court, by authorizing Omni's late-filed proof of claim, made it a "timely" claim for purposes of § 523(a)(3).

3

DISCUSSION

This court reviews findings of fact for clear error and conclusions of law *de novo.*

As the courts below recognized, Omni's debt would ordinarily have been rendered nondischargeable by the plain terms of section 523(a)(3). Section 523(a)(3) excepts from the operation of a discharge any debt:

> neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing....

Omission of a creditor's name from the mailing matrix is just as impermissible as omission from the formal schedules. *See Bonner v. Adams (In re Adams),* 734 F.2d 1094 (5th Cir.1984). The courts, and the debtor on appeal, try to escape this net in several ways. First, the debtor contends that section 523(a)(3) is concerned only with the debtor's ability to file a "timely" proof of claim, hence the "remedy" of allowing the creditor to file a proof of claim will suffice. Alternatively, they relied on the equitable powers conferred on bankruptcy courts by section 105 of the Code. As another fallback, they invoked Bankruptcy Rules 3003(c)(3) and 9006(b)(1). Mysteriously absent from either of the lower courts' opinions or the appellees' briefs is any decision of any court anywhere allowing a Chapter 11 debtor to join in his bankruptcy—and hence discharge—a creditor who had not been properly scheduled or noticed with the proceedings at any time pertinent to the Chapter 11 process. Upon examination, the reason for this absence of

4

authority is clear:  the lower courts were wrong.

A. Section 523(a)(3)

In a recent construction of section 523(a)(3), this court held that debtors in a no-asset proceeding could re-open their case to schedule creditors about whose claims they had accidentally forgotten.  *See Stone v. Caplan (In re Stone),* 10 F.3d 285 (5th Cir.1994).  This court adopted as the touchstone for interpreting section 523(a)(3) an earlier decision of the circuit in *Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964).  *See Stone,* 10 F.3d at 290. According to *Stone,* the enactment of section 523(a)(3) of the Bankruptcy Code legislatively overruled an earlier Supreme Court decision that required strict construction of the no-notice ground for nondischargeability.  *See id.*[1]  Our court, lining up with the decisions of several other circuit courts, employed the *Robinson* test to determine nondischargeability where a creditor's claim has not been properly scheduled prior to the bar date.  *See id.* at 290 n. 10.  *Robinson* identified three factors relevant to determining whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt.  In *Stone,* the employment of the *Robinson* test resulted in the court's granting permission to the debtor to schedule the hitherto unlisted creditor largely because

---

[1]*Stone* states that the enactment of § 523(a)(3) in the Bankruptcy Code was intended to overrule the Supreme Court's strict construction of its Bankruptcy Act predecessor provision § 17(a)(3) in *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904).  *See Stone,* 10 F.3d at 290.  One may argue academically what Congress intended to do and what it actually accomplished by the minor word changes between the two provisions.  Our court had not speculated on that question before *Stone,* so *Stone* is now dispositive of it in our circuit.

the case was a no-asset case.  In a Chapter 7 no-asset case, the creditor has no obligation to file a proof of claim, *see* Bankruptcy Rule 2002(e), hence nothing to gain or lose from filing a "timely" claim.[2]  Additionally, it mattered to the *Stone* decision that the debtors' failure to schedule the particular claim was merely inadvertent, accompanied by no improper motive, fraud, or intentional design.  *See Stone,* 10 F.3d at 291.

Although this is not a no-asset case, the construction of section 523(a)(3) adopted in *Stone* is binding on this panel. According to *Stone,* incorporating *Robinson,* courts must examine the reason the debtor failed to list the creditor, the amount of disruption which would likely occur by an untimely listing of the claim, and any prejudice suffered by the listed creditors and the unlisted creditor in question.  *See id.* at 290.  *Stone* supports the methodology of the lower courts in this case but not their result.

First, contrary to the facts in *Stone,* the Smiths were not

---

[2]Several bankruptcy courts, concerned with the disruption that may result from reopening no-asset cases to permit the late scheduling of creditors, have offered a different and very persuasive reading of section 523(a)(3).  These courts suggest that under section 727(b), a debtor is statutorily entitled to a discharge from *all* of his pre-petition debts, listed or unlisted, unless a specific exception to discharge applies.  Section 523(a)(3), these courts note, only applies where a proof of claim would have been required.  In no-asset cases, because the creditors are instructed *not* to file proofs of claim, section 523(a)(3) does not apply.  Hence, there is no justification for re-opening the bankruptcy case to permit a futile act.  As these courts point out, the debtors can always advance the defense of discharge in a later state or federal court proceeding on the unscheduled debt.  *See, e.g., In re Stecklow,* 144 B.R. 314 (Bankr.D.Md.1992);  *In re Guzman,* 130 B.R. 489 (Bankr.W.D.Tex.1991).  *See generally* 8 Collier on Bankruptcy ¶ 5010.06 and n. 7 (15th ed. 1994).

without fault in failing to list Omni on their original mailing matrix and in later listing Omni at the wrong address. Indeed, the facts here reek of irresponsibility, if not worse.

Omni's present counsel and the Smiths' current law firm had both been counsel of record in a previous bankruptcy proceeding filed by the company whose debts Smith guaranteed to Omni. Nevertheless, the Smiths have contended that they were unable to "find" Omni in order properly to schedule and list it in their personal bankruptcy. Omni was neither duly scheduled nor duly listed as a creditor on the mailing matrix for the Chapter 11 proceeding. Two and one-half years after filing bankruptcy the debtors filed a request to place Omni's address on the mailing matrix—and they inserted the wrong address. As a result of the debtors' carelessness, Omni did not learn of the bankruptcy filing or pendency of the proceeding, instituted in 1987, until May 7, 1991. Omni received its first notice approximately three and one-half years after the case was filed, one year after the bar date for proofs of claim had passed, and three months after the plan of reorganization had been approved by creditors. The bankruptcy court found that the debtors could have learned Omni's correct address by picking up the telephone and concluded that it could not condone such "a lack of diligence on the part of the debtor." Coupled with the fact that the debtors apparently failed properly to schedule a number of other creditors for several years, their error with regard to Omni can hardly be termed mere negligence or inadvertence.

The second *Stone/Robinson* factor focuses on undue disruption to courts' dockets.  The bankruptcy court here minimized disruption by effectively extending the deadline for proofs of claim and including Omni retroactively among the creditors whose claims had been filed and approved by the court.  Little disruption occurred in the court's handling of this case.[3]

The third *Stone/Robinson* factor, which evaluates prejudice to the creditors, is the most critical here.  In *Stone,* the court found no prejudice either to the creditors who were included or to those who were omitted from the debtors' original schedules.  Because *Stone* was a no-asset case in which creditors were not even required to file proofs of claim, there were no assets to be distributed among the creditors.  Here, the bankruptcy court sought to deflect the question of prejudice to Omni by stating that no distributions had yet been made in the case and by ordering Omni to participate as a late-approved claimant.  What the court overlooked, however, was a critical difference between liquidation and reorganization cases.  Dramatic consequences integral to the theory and practice of Chapter 11 accompanied the Smiths' obligation to schedule and properly identify their creditors to the court.  As presently structured, Chapter 11 is a participatory

---

[3]If permitting the re-opening of cases for late-filed claims were to become widespread, courts' dockets would be disrupted. It is not inconceivable that a late-filed claim could so alter the distribution scheme for like creditors that they might object to the claim, *see* Bankr.R. 3007, or its consequences.  Disruption could also occur from the late filing of discharge and dischargeability complaints that must be permitted in tandem with late-filed claims.  *See* 11 U.S.C. § 523(a)(3).

endeavor in which the secured and unsecured creditors negotiate with the debtor a plan of reorganization that suits their individual and collective interests. If a creditor is not scheduled or notified of the bankruptcy, it loses its opportunity to participate and influence the negotiating process. Needless to say, the creditor may also lose the opportunity to try to call a halt to a Chapter 11 case that is hopelessly mismanaged or over-extended. Moreover, without proper notice, the creditor loses the rights to object to its initial claim-classification, to vote on the plan, and if necessary, to object to confirmation. That the creditor may ultimately share in the fruits of a confirmed plan is small solace when the creditor has been left out of the process that led to the plan's formation.[4] Omni was seriously prejudiced by the late notification of the Smiths' bankruptcy that it received.

Prejudice to other creditors of the Smiths by authorizing Omni's late-filed claim might also easily be hypothesized, although the bankruptcy court believed the contrary. Including an unanticipated claim such as Omni's in a particular creditor class after the plan has been negotiated might upset the expectations of recovery that supported other creditors' votes for the plan. It is not accurate, however, to say that holding Omni's claim nondischargeable necessarily prejudices the other creditors unless that ruling would impair the success of the confirmed plan. The

---

[4]Although a creditor's scope of participation in a Chapter 7 case is necessarily narrower, similar considerations could cause prejudice in that situation as well.

record discloses no firm conclusion regarding prejudice to Omni's other creditors.

The Smiths also hope to avoid the application of the *Stone/Robinson* factors by an artful interpretation of section 523(a)(3) not advanced in *Stone*. Thus, the Smiths contend, section 523(a)(3) expresses concern *only* with the ability of the creditor to file a "timely" proof of claim (or a timely complaint to avoid dischargeability in certain cases) with two consequences for this case. First, the bankruptcy court, by extending the due date for Omni's proof of claim, rendered it "timely" within section 523(a)(3). Second, because the proof of claim was "timely," no other events in the bankruptcy are relevant to assessing the debtor's compliance with that section. If this interpretation were correct, there would hardly be any reason for a debtor to respect the requirement of filing timely, complete, and accurate schedules of creditors, for it could always seek a retroactive cure for tardiness as the debtors did here. The debtors' interpretation is logically inconsistent with the reasoning of *Stone* if it affords no room for the "equitable principles" on which *Stone* relied when determining the propriety of allowing the debtor to schedule a previously omitted claim. It is also difficult to believe that the bankruptcy courts' timeliness fiat, which this construction of § 523(a)(3) would condone, ought to supplant so easily the bankruptcy rules regarding the filing of schedules and bar dates for proofs of claim. The opportunities to manipulate the bankruptcy process would simply be too tempting to support a conclusion that Congress

intended "timeliness" to be determined at the sole discretion of a bankruptcy court without reference to the circumstances of the case.

We are thus unpersuaded that under the *Stone/Robinson* test, § 523(a)(3) authorized the bankruptcy court to order that Omni file a retroactively "timely" proof of claim rather than gain a nondischargeable debt.

B. Section 105(a)

Section 105(a) of Title 11 gives bankruptcy courts the equitable power to issue any order "necessary or appropriate to carry out the provisions [of the Bankruptcy Code and Rules]." From this section emanate the general equitable powers of bankruptcy courts. Those powers, however, have their limits, and the district court erred in holding that section 105(a) could be invoked here.

Bankruptcy courts cannot use their equity powers under Section 105(a) to fashion substantive rights and remedies not contained in the Bankruptcy Code or Rules or to negate substantive rights or remedies that are available. *See Official Committee of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988), *cited with approval in Browning v. Navarro,* 887 F.2d 553, 559 (5th Cir.1989). Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1) govern extensions of time, and those rules provide, in pertinent part, "The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed.R.Bankr.P. 3003(c)(3) (regarding cases filed under Chapter 9 or

11

Chapter 11).

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).

Rules 3003(c)(3) and 9006(b)(1), which courts have held must be read together, provide the criteria the bankruptcy court should have used to analyze whether to extend the deadline for filing a proof of claim in the Smiths' reorganization case. *See Brunswick Assocs. Ltd. Partnership v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.),* 943 F.2d 673, 676 (6th Cir.1991), *aff'd,* --- U.S. ----, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Wright v. Placid Oil Co.,* 107 B.R. 104, 105-06 (N.D.Tex.1989). Bankruptcy courts cannot use their equitable powers created by Section 105(a) to expand the requirements of Rules 3003(c)(3) and 9006(b)(1). Thus, the district court erred in justifying the extension of time for filing based on Section 105(a).

C. Bankruptcy Rules 3003(c)(3) and 9006(b)(1)

Moreover, to the extent that the decision of the bankruptcy court to extend the deadline for filing a proof of claim was based on Rules 3003(c)(3) and 9006(b)(1), it was wrong. Rule 3003(c)(3), read together with Rule 9006(b)(1), asks first whether the request for enlargement of time was made before the deadline expired. *See* Fed.R.Bankr.P. 9006(b)(1). In this case, that deadline long since

12

had expired. Thus, the crux of the matter is the second question in Rule 9006(b)(1), whether the failure was a result of excusable neglect.

The Smiths' neglect to notify Omni of the bankruptcy proceedings for almost four years was not excusable. Excusable neglect is the "failure to timely perform a duty due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." The bankruptcy court, however, specifically found "a lack of diligence" on the part of the Smiths[5] and extended the time in which to file a proof of claim based on considerations other than excusable neglect. Doing so circumvented Rules 3003(c)(3) and 9006(b)(1).

### CONCLUSION

The factors employed by this court under *Stone/Robinson* and § 523(a)(3) to evaluate a debtor's request to authorize late filing of a proof of claim do not justify granting relief to the Smiths in this case. Neither § 105(a) nor the Bankruptcy Rules authorized the lower courts' actions. Under § 523(a)(3), the debt owed to Omni, which had no timely actual or constructive notice of the Smiths' Chapter 11 case, was not discharged.

The judgments of the bankruptcy and district courts are

---

[5]The district court characterized the Smiths' conduct as "good faith mistakes" and stated that the bankruptcy court found that the Smiths used reasonable diligence. As for good faith, the bankruptcy court made no such finding, and as for reasonable diligence, the bankruptcy court found that the Smiths had *not* been diligent. Given that the district court failed to explain how the bankruptcy court's factual findings were clearly erroneous, the district court erred in finding that the Smiths acted in good faith using reasonable diligence.

13

REVERSED, and the case is REMANDED with instructions to enter judgment declaring that Omni's debt is not discharged.