## In re PERMIAN PRODUCERS DRILLING, INC., Debtor.

### No. MO–00–CA–133.

United States District Court,
W.D. Texas,
Midland Division.

Nov. 13, 2000.

---

Wiley France James, III, James, Goldman & Haugland, P.C., El Paso, TX, for debtor.

Michael G. Kelly, McMahon, Tidwell, et al., Odessa, TX, for creditor.

**Order Denying Glynn Andrews's Motion for Stay Pending Appeal of the Order for Substantive Consolidation and Order Confirming the Reorganization Plan**

FURGESON, District Judge.

Before this Court is Glynn Andrews's Motion for Stay Pending Appeal of the Bankruptcy Court's Order for Substantive Consolidation and Order Confirming the Reorganization Plan. To allow proper consideration of the Andrews's motions, the Court issued a temporary stay through and until November 10, 2000. After full consideration of the arguments presented and of the relevant authorities, the Court is of the opinion that Andrews's Motions for Stay should be DENIED.

**Facts and Procedural History**

This case involves bankruptcy proceedings of two entities, Permian Producers, Inc. ("PPI") and Permian Producers Drilling, Inc. ("PPDI"). The shareholders of PPI were Tommy G. Carmen and Charles R. Close. The shareholders of PPDI were Glynn Andrews (50%), Carmen (40%), Close (5%) and Carmen's son Gerald (5%). PPI and PPDI also had common officers and directors. Carmen was president and Close was secretary for both corporations. In addition, Carmen and Close served as the directors of both PPI and PPDI.

Andrews has nearly 40 years of experience in the oil and gas industry. Andrews first met Close in 1992, when Close was employed as the accountant for Andrews's company, MoVac Service Company. MoVac is involved in oilfield transportation. It was Close who proposed the PPDI joint venture. In addition to being a 50% shareholder in PPDI, Andrews served as a director and he was extensively involved in its management and operation.

At some point in the relationship, Andrews sued both the entities as well as the individuals. On September 1, 1999, prior to the commencement of bankruptcy proceedings against PPI and PPDI, Andrews entered into a compromise and settlement agreement with PPI, PPDI, Tommy Carmen, Charles Close and Gerald Carmen, which provided for the payment to An-

drews of$2,840,000. This amount represented Andrews's equity investment into PPDI. Payment was to be funded by the auction of substantially all the assets of PPI and PPDI. PPI received approximately $2,700,000 from the auction. However, it owed approximately $5,200,000 in debt: $3,000,000 to Bank United and $2,200,000 to various unsecured creditors. PPDI received $2,100,000 from the auction. It owed $500,000 to various unsecured creditors. Under the terms of the compromise and settlement agreement, Andrews could collect the $2,840,000 owed to him from both PPI and PPI as well as Carmen and Close, after payment to the secured and other unsecured creditors. For obvious reasons, after bankruptcy was filed, Andrews went to Bankruptcy Court for payment of his claim.

An involuntary petition for Chapter 11 bankruptcy was filed against PPDI on September 24, 1999. PPI filed a voluntary petition for Chapter 11 bankruptcy on September 29, 1999. After extensive hearings, the Bankruptcy Court, with Bankruptcy Judge Ronald King, presiding, entered its Order for Substantive Consolidation of the two estates on October 19, 2000. The Bankruptcy Court also confirmed the Chapter 11 Plan of Reorganization for the consolidated estate. On October 23, 2000, Glynn Andrews, a creditor of both PPDI and PPI, timely filed Notices of Appeals and moved in the Bankruptcy Court for a stay of all the orders pending appeal. The Bankruptcy Court heard arguments and denied each of Andrews's stay requests, but granted stays through and until November 3, 2000, in order to allow Andrews to seek stays from this District Court. This Court granted Andrews's Motion for Emergency Hearing on Motions for Stay Pending Appeal of Order Confirming Plan Filed by Official Unsecured Creditors Committee and Motion for Emergency Hearing on Motions for

Stay Pending Appeal of Order for Substantive Consolidation.

### Standard of Review

■■■ The decision of a bankruptcy court to deny a stay pending appeal will be reviewed for abuse of discretion. *In re Barrier,* 776 F.2d 1298, 1299–1300 (5th Cir.1985). A bankruptcy court abuses its discretion if it seriously errs in its determination of whether the moving party has established a case meriting injunctive relief. *Id.* at 1300. The "clearly erroneous" standard of review applies to a bankruptcy court's findings of fact. FED. R. BANKR. P. 8013; *In re First South Savings Ass'n,* 820 F.2d 700, 711 (5th Cir.1987). A finding is "clearly erroneous" if "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *First South,* 820 F.2d at 711 (citation omitted). The bankruptcy court's conclusions of law are reviewed de novo. *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1307 (5th Cit.1985).

■■ In this case, however, this Court considers Andrews's motions entirely de novo rather than review them as an appeal of the Bankruptcy Court's denial of the motions for stay. This avoids the needlessly complex and somewhat absurd situation where this Court would review for abuse of discretion Judge King's determination that Andrews failed to show a likelihood of success in proving that Judge King abused his discretion in ordering substantive consolidation or in confirming the reorganization plan. The Court acknowledges that, in order to prevail on his motion for stay at the Bankruptcy Court, Andrews would have had to convince Judge King that he erred in his original rulings. 6 NORTON BANKR.L. & PRACT. 2d § 148:60 (2000) ("As a practical matter, this showing [of a likelihood of success] is

always a difficult one, because it is to be made in the first instance to the court who has by definition ruled against the applicant."). In addition, the absence of findings of fact and conclusions of law other than the rulings themselves makes a review of the Bankruptcy Court's rulings for abuse of discretion problematic. *First South*, 820 F.2d at 708.

## Discussion

 In determining whether a stay pending appeal should be granted, the district court considers four factors: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether granting the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *First South*, 820 F.2d at 709. While the absence of any one factor is not fatal to a successful motion for stay, greater weight is given to the first factor—the movant's likelihood of success. *Id.* at 709 n. 10 (holding that in the absence of the movant's showing of a likelihood of success on the merits, a stay is warranted only if the balance of the remaining equities is heavily titled in the movant's favor).

### A. Likelihood of Success on the Merits

 In most cases, a showing of a likelihood of success is a prerequisite in order for the movant to obtain a stay. *Id.* (citation omitted) ("Likelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement."). If the appeal involves a "serious legal question," then a stay may be appropriate upon the lesser showing that the case is one with "patent substantial merit" and that the "balance of equities (i.e. consideration of the other three factors) is ... heavily titled in the movant's favor." *Id.* (citation omitted).

Andrews appeals both the order granting substantive consolidation and the order confirming the reorganization plan. As to the order granting substantive consolidation, Andrews presents two arguments for appeal. First, Andrews argues that the Bankruptcy Court lacks the statutory authority to order the substantive consolidation of the debtors PPI and PPDI. Next, Andrews asserts that even if substantive consolidation is permitted by the Bankruptcy Code, the Bankruptcy Court erred in finding that substantive consolidation was warranted in this case. Andrews also seeks appeal of the order confirming the reorganization plan. First, he asserts that the Bankruptcy Court erred in allowing Bank United's claim since it failed to timely file a proof of claim. Second, he asserts that the Bankruptcy Court erred in subordinating Andrews's claim to the claims of the other unsecured creditors. These issues do not raise any "serious legal questions" warranting a lesser showing than a likelihood of success.

### 1. Does the Bankruptcy Court have the authority to order substantive consolidation?

11 U.S.C. § 105(a), states, in relevant part, that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Andrews asserts that whether a bankruptcy court has the authority to order substantive consolidation under Rule 105(a) poses a serious legal question warranting a lesser showing than the usual likelihood of success. In support, Andrews notes the absence of any Fifth Circuit case law directly determining this issue. Next, he points to the Fifth Circuit's opinion in *In re Smith*, 21 F.3d 660, 665 (5th Cir. 1994), which seems to demarcate a bound-

ary of the bankruptcy court's equity power under Bankr. Rule 105(a). The Court finds these arguments unconvincing.

 A split among the circuit courts may indicate a "serious legal question." However, rather than a divergence of legal authority, in this instance, a survey of case law and legal scholarship indicates a general agreement with the proposition that a bankruptcy court has authority to order substantive consolidation. *In re Bonham*, 229 F.3d 750, 764 (9th Cir.2000) (expressly determining that "even though substantive consolidation was not codified in the statutory overhaul of the bankruptcy law in 1978, the equitable power undoubtedly survived enactment of the Bankruptcy Code."); 2 COLLIER ON BANKRUPTCY ¶ 105.09[1][b] (Lawrence P. King ed., 15th ed. revised 2000); J. Stephen Gilbert, Note, *Substantive Consolidation in Bankruptcy: A Primer*, 43 VAND. L.REV. 207, 220–31 (1990) (discussing in detail the evolution of the case law establishing the bankruptcy court's power to order substantive consolidation). In fact, contrary to the position taken by Andrews, the Fifth Circuit has acknowledged that the bankruptcy court has the authority to order substantive consolidation. *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1145 n. 2 (5th Cir.1987) ("The bankruptcy court has authority to order de facto disregard of the corporate form through [substantive] consolidation proceedings.").

In support of his contention to the opposite, Andrews points to language contained in the Fifth Circuit's decision in *In re Smith*, specifically the passage stating:

> Bankruptcy courts cannot use their equity powers under Section 105(a) to fashion substantive rights and remedies not contained in the Bankruptcy Code or Rules or to negate substan-

tive rights or remedies that are available.

*In re Smith*, 21 F.3d 660, 666 (5th Cir. 1994). Andrews's application of *Smith* is misplaced. To begin with, *Smith* did not specifically address the bankruptcy court's authority to order substantive consolidation under Rule 105(a). Instead, it dealt with a bankruptcy court's use of its equitable power to extend the filing deadline for proof of claim in contradiction of 11 U.S.C. § 523(a)(3). Hence, whether a bankruptcy court has the authority to order substantive consolidation under Rule 105(a) presents a distinguishable issue than the issue confronted in *Smith*. Unlike the action taken in *Smith*, substantive consolidation is not prohibited by statute, though it is not expressly authorized either. *See* FED. R. BANKR. P. 1015 advisory committee note (acknowledging that substantive consolidation "is neither [expressly] authorized or prohibited by the Bankruptcy Code").

 Rather than violate any provisions of the Bankruptcy Code, substantive consolidation facilitates the underlying purpose of bankruptcy proceedings by allowing the court to attach a pool of assets that should have been included since the commencement of the bankruptcy case. 2 COLLIER ON BANKRUPTCY ¶ 105.09[3] ("[I]f the separate existence of the two companies was a mere fiction, then consolidation simply recognizes the existing reality that . . . all property was held in a single entity."). This is especially applicable to a case, such as here, involving alter-ego corporations. In fact, the Supreme Court recognized that the consolidation of different but related estates is a vital tool in fulfilling a fundamental purpose of bankruptcy proceedings. *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293 (1941), *reh'g denied*, 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552 (1941) ("The power of the bankruptcy

court to subordinate claims or to adjudicate equities arising out of the relationship between several creditors is complete."). The statement in *Smith* cited by Andrews should not be read to limit a bankruptcy court's equity power under section 105(a) to only issuing orders already expressly allowed for by other provisions in the Bankruptcy Code. Such a reading would render any equity power under section 105(a) superfluous and redundant to already existing provisions.

Though the Fifth Circuit in *Smith* recognized that a bankruptcy court's equity power is not unlimited, it did not negate the notion that "'[f]or many purposes, courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.'" *Bonham*, 229 F.3d at 763 (*quoting Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939)). Consistent with this notion, even in an era of limited equity power, no federal court has found that the bankruptcy court's power to order substantive consolidation falls outside these limits.

■ Whatever the limits of the bankruptcy court's equity power, the power to order the substantive consolidation of two debtors does not fall outside its scope. Therefore, the Court finds that Andrews fails to show a likelihood of success on its argument that the bankruptcy court does not have the authority to order substantive consolidation.

### 2. Does the evidence support the substantive consolidation of PPI and PPDI?

Andrews next argues that even if substantive consolidation is permitted, the Bankruptcy Court erred in determining that substantive consolidation was proper on the facts presented. The Court disagrees.

■ In determining whether Andrews has made a showing of a likelihood of success as to whether substantive consolidation was merited in this case, the Court is cognizant of the applicable standard of review that would apply to the Bankruptcy Court's decision to order consolidation. Because it is an exercise of a bankruptcy court's equitable power under section 105(a), an order for substantive consolidation is reviewed for abuse of discretion. *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1104–05 (11th Cir.1994); *First Nat'l Bank of El Dorado v. Giller (In re Giller)*, 962 F.2d 796, 799 (8th Cir.1992). Andrews fails to show a likelihood of success in proving that the bankruptcy court abused its discretion in ordering the substantive consolidation of PPI and PPDI.

■ The absence of any statutorily prescribed standard has meant that the responsibility for developing standards for determining whether substantive consolidation should be granted has been left largely to the courts. The courts, however, have not developed a universally accepted standard for substantive consolidation. *Bonham*, 229 F.3d at 765–66; 2 COLLIER ON BANKRUPTCY ¶ 105.09[2]. Rather, whether the circumstances warrant substantive consolidation is a highly fact specific analysis that must be made on case-by-case basis. *Bonham*, 229 F.3d at 765–66.

Under the more traditional test—the elements test—the existence of a combination of elements showing a strong relationship among the debtors is a prerequisite for substantive consolidation. The substantial relationship must also be coupled with additional elements such as commingling of separate assets and liability so as to make it prohibitively expensive or difficult to sort out the proper assignment and ownership of the assets and liabilities.

The elements most commonly cited by courts under this test are:

(1) the degree of difficulty in segregating and ascertaining individual assets and liability;

(2) the presence or absence of consolidated financial statements;

(3) the profitability of consolidation at a single physical location;

(4) the commingling of assets and business functions;

(5) the unity of interests and ownership between the various corporate entities;

(6) the existence of parent and intercorporate guarantees on loans; and

(7) the transfer of assets without formal observance of corporate formalities.

*In re Vecco Constr. Indus., Inc.,* 4 B.R. 407, 410 (Bankr.E.D.Va.1980). No single element or group of elements is determinative as to whether substantive consolidation is warranted. 2 COLLIER ON BANKRUPTCY ¶ 105.09[2][a].

More recent cases have distilled the elements test into a balancing test where the focus is on the impact of consolidation on creditors. *See, e.g., In re Snider Bros.,* 18 B.R. 230 (Bankr.D.Mass.1982). In *Snider,* the bankruptcy court concluded that:

> while several courts have recently attempted to delineate what might be called "the elements of consolidation", ... the only real criterion is ... the economic prejudice of continued debtor separateness versus the economic prejudice of consolidation.

*Id.* at 234. Similar to the elements test, the party proposing consolidation must show identity between the entities to be consolidated. *Id.* at 236–38, 238. Then, there must also be a showing that consolidation is necessary to "prevent harm or prejudice, or to effect a benefit generally." *Id.; Reider,* 31 F.3d at 1107. An objecting creditor can still defeat a proposed consoli-

dation by showing that he relied on the separateness of the debtor in extending credit and would thereby suffer harm by consolidation. *Snider,* 18 B.R. at 238. Finally, the court will order substantive consolidation only if the benefits counterbalance or outweigh the harms. *Id.; See also Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270, 276–77 (D.C.Cir.1987)("adopting the balancing test articulated in *Snider* but requiring a showing that the benefits of consolidation heavily outweigh the harms").

The Second Circuit formulated a simplified version of the balancing test emphasizing two core factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on the debtors' separate identity in extending credit; and (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518 (2nd Cir.1988); *Bonham,* 229 F.3d at 766–67 (adopting the Second Circuit's balancing test). The presence of either factor provides a sufficient basis to order consolidation. *Bonham,* 229 F.3d at 765–66 (adopting and applying the test articulated in *Augie/Restivo* ).

The failure of the Fifth Circuit to adopt a standard is not by itself a sufficient basis to order a stay pending appeal. The movant must still show a likelihood of success on the merits. Nor does the absence of a standard create a presumption that a serious legal question exists so as to warrant a lesser showing. Even then, the movant must still present a case with patent substantial merit and make a strong showing on the other factors. *First South,* 820 F.2d at 709 n. 10. Andrews fails to make such a showing. First, he fails to identify which standard the Fifth Circuit would adopt and how the facts in the case do not

meet that standard. Next, he fails to show that, in light of its factual findings, the Bankruptcy Court abused its discretion in ordering consolidation.

▮ Though a bankruptcy court's decision to order consolidation is reviewed for abuse of discretion, the underlying findings of fact supporting that decision will be set aside only if "clearly erroneous." FED. R. BANKR. P. 8013. After extensive hearings and trial, the Bankruptcy Court found a substantial relationship between the two debtors PPI and PPDI based on extensive commingling, shared assets, and transfers of funds without any documentation. Additionally, PPI and PPDI occupied one physical premise and both were controlled by the same officers and directors. In fact, the evidence presented to Judge King indicates an extensive combination of business functions between the two debtors. In fact, the review of the accounting records and the business conduct of PPI and PPDI performed by Douglas Bunnell indicate that many of the unsecured creditors did not distinguish between PPI and PPDI. Also noteworthy, the evidence indicates that PPDI had only minimal capitalization and instead relied on PPI to provide additional working capital necessary until PPDI began to receive its income stream.

Next, there is sufficient evidence to establish that consolidation is necessary to avoid some harm. Judge King found that, under the unconsolidated plan, the unsecured creditors would receive significantly less than they would under a plan where the assets and liabilities of PPI and PPDI were consolidated. In addition, in the absence of consolidation, not only would the unsecured creditors—many of whom did not know that PPI and PPDI were not distinct entities—receive less, Andrews would receive a substantial distribution on his claim, which is based on his equity investment in PPDI. Courts have recognized that this type of distribution is the type of harm that should be remedied by substantive consolidation. *Eastgroup Properties v. Southern Motel Ass'c,* 935 F.2d 245, 250 (11th Cir.1991) (recognizing that consolidation may be warranted where "absent substantive consolidation, the majority of creditors will receive only a small portion of their claims, while the equity interest holder may receive a substantial distribution").

Judge King's finding concerning Andrews's substantial involvement in and knowledge of the operation and management of PPI and PPDI is significant on the above point. Unlike an ordinary creditor who can claim that he relied on the debtor as a separate and distinct entity in deciding to extend credit, Andrews was an insider to PPDI and extensively involved in the management of it. That Andrews received settlement from both PPI and PPDI on his claim, which was predicated on his investment in PPDI, only further indicates the absence of his reliance on PPDI as a separate and distinct entity. Therefore, Andrews "knew or should have known of the close association" between the debtors PPI and PPDI and is "estopped to assert prejudice caused by legal recognition, in the form of consolidation, of an otherwise homogeneous corporate framework." *Snider,* 18 B.R. at 235.

Given the above analysis, the evidence supports a determination that the benefits of consolidation counterbalance and outweigh any harm to Andrews, a former equity holder. Regardless of what standard is applied, the findings of fact support the Bankruptcy Court's decision to order the substantive consolidation of PPI and PPDI. Therefore, the Bankruptcy Court did not abuse its discretion in ordering the substantive consolidation of PPI and PPDI. As such, Andrews fails to show a

likelihood of success on the merits as to this point of error.

Though the lack of case law in the Fifth Circuit determining the precise application of substantive consolidation leaves many questions unresolved, the case presented by Andrews is not the right case to resolve these questions. The substantial relationship between the debtors PPI and PPDI along with Andrews's own insider role as a shareholder simply do not present a strong case against substantive consolidation. Given the factual finding made by the bankruptcy court supporting substantive consolidation, this Court cannot find that the bankruptcy court abused its discretion in ordering substantive consolidation.

### 3. *Res Judicata* and Law of the Case

Andrews next argues that the reorganization plan, which subordinates Andrews's claim against PPDI to the claims of the unsecured creditors of PPI, violates the doctrines of *res judicata* and law of the case by contradicting the Bankruptcy Court's prior order denying the Unsecured Creditors Committee's objection to Andrews proof of claims. The Court notes that because this issue raises a question of law, it will be reviewed de novo on appeal. *Richmond Leasing,* 762 F.2d at 1307.

Section 510(b) of the Bankruptcy Code states, in relevant part:

> For the purpose of distribution under this title, a claim arising ... for damages arising from the purchase or sale of such a security ... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security.

11 U.S.C. § 510(b). As a remedial statute, the Court reads section 510(b) broadly in order to effectuate the intent of Congress. *In re Granite Partners, L.P.,* 208 B.R. 332, 341 (Bankr.S.D.N.Y.1997). The court in *Granite Partners* noted that

"[s]ection 510(b) prevents a shareholder from converting his interest into a claim and sharing *pari passu* with other unsecured creditors." *Id.* The fact that Andrews's claim is predicated on the settlement agreement does not alter the fact that the underlying claim is a claim for damages arising from the purchase of a security. The record indicates, and Andrews does not now dispute, that his claim for $2,840,000 represents his interest in PPDI as a shareholder. Therefore, Andrews's claim was properly subordinated pursuant to section 510(b).

Andrews's misconstrues the doctrines of *res judicata* and law of the case. Judge King's order allowing Andrews's claim does not then preclude that claim from being subordinated to the claims of other unsecured creditors. Rather than having preclusive effects, the decision to allow a claim is a prerequisite to the eventual prioritization of that claim in the hierarchy of allowed claims. Therefore, the Court finds that Andrews fails to show a likelihood of success on this point.

### 4. Substantive Consolidation and the Texas Business Corporations Act

Andrews marshals the argument that the order granting substantive consolidation is prohibited by the TEXAS BUSINESS CORPORATIONS ACT. see Tex. Bus. Corp. Act. Ann. art. 2.21 (West 1980 & Supp.2000) (requiring a showing that the shareholder or affiliate of the corporation "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit" of the "shareholder or affiliate" before such shareholder or affiliate is liable to the corporation's creditors). Andrews misconstrues the protections of limited liability provided by article 2.21. Though it borrows from the doctrine of "piercing the corporate veil," substan-

tive consolidation does not seek to hold shareholders—such as Andrews—personally liable for the debts of the corporate entity. Any exposure faced by Andrews by substantive consolidation is limited to his initial investment into PPDI.

In addition, Andrews's argument that Texas law precludes substantive consolidation rests on the assumption that substantive consolidation is entirely without any statutory basis if not clearly contradictory to express provisions of the Bankruptcy Code. As discussed above, substantive consolidation does not make a wholesale substitution to underlying state or federal laws. Rather, courts have universally recognized substantive consolidation as a tool for properly defining the relevant group of assets and liabilities of the bankruptcy estate. *See, e.g., Bonham,* 229 F.3d at 765 (recognizing that "even though substantive consolidation was not codified in the statutory overhaul of bankruptcy law in 1978, the equitable power undoubtedly survived enactment of the Bankruptcy Code and that "[n]o case" has held to the contrary").

### 5. The Survival of Bank United's Lien

 Lastly, Andrews makes the argument that the Bankruptcy Court erred in providing for the payment of Bank United's lien in the consolidated reorganization plan in light of Bank United's failure to file a proof of claim. The Court disagrees.

The lien in question originates from a December 29, 1997 agreement where PPI granted to Bank United a first priority, perfected security interest in all of its inventory and equipment. Under this agreement, PPI could not sell or transfer any of its inventory or equipment without the prior written consent of Bank United except for sales of inventory to buyers in the ordinary course of business. On December 30, 1997, however, PPI sold several of its rigs to the shareholders of PPDI. Andrews paid $2,100,00 in cash and the remaining shareholders—Gerald Carmen, Tommy Carman and Charles Close—gave unsecured promissory notes. The shareholders' interests in the rigs were then transferred to PPDI in exchange for PPDI stock, which had been previously issued to them.

Andrews seeks to avoid the attachment of this lien to any assets held by PPDI. However, under the security agreement and TEX. BUS. & COM.CODE ANN. § 9.307(a) (West 2000), the shareholders cannot take interests in PPI's rigs free of Bank United's security interest unless they were buyers in the ordinary course of business. Texas law defines a buyer in the ordinary course of business as:

> [A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind.

TEX. BUS. & COM.CODE ANN. § 1.201(9) (West 2000); *In re Winn's Stores, Inc.,* 177 B.R. 253, 256–57 (Bankr.W.D.Tex.1995). Judge King made the finding that sale of the rigs from PPI to the shareholders of PPDI and, eventually, to PPDI was not a sale to buyers in the ordinary course of business. The evidence presented at trial supports this finding. Therefore, Bank United's lien would attach to these subsequent transfers.

11 U.S.C. § 506(d)(2) provides that an otherwise valid lien is not avoided by bankruptcy proceedings if this claim is disallowed only for failure to file a proof of claim pursuant to 11 U.S.C. § 501. In the absence of any provision of the Bankruptcy Code invalidating Bank United's lien on PPI's inventory and equipment, this lien survives despite Bank United's failure to properly file a proof of claim in the bankruptcy proceedings. *Simmons v. Savell*

(*In re Simmons* ), 765 F.2d 547, 556 (5th Cir.1985) ("It is clear under the [Bankruptcy] Code that any statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code."). Therefore, Andrews fails to show, to the standard required, that the Bankruptcy Court erred in including Bank United's lien in the plan for reorganization despite the failure to properly file a proof of claim.

### B. Irreparable Injury

Generally, injunctive relief such as a stay is not appropriate to secure post-judgment legal relief in the form of money damages. *Federal Sav. & Loans Ins. Corp. v. Dixon,* 835 F.2d 554, 560 (5th Cir.1987). Purely monetary injury is not irreparable because the injured party has remedy by bringing suit to recover damages. *See Asheville Bldg. Assoc. v. Carlyle Real Estate Ltd.,* 93 B.R. 920, 923 (W.D.N.C.1988) ("[M]onetary injury ... [is] by its nature, not irreparable."). However, monetary injury resulting from the distribution of assets pursuant to a confirmed reorganization plan poses an exception to this general rule. *See Licensing by Paolo, Inc. v. Sinatra (In re Gucci* ), 105 F.3d 837, 839–40 (2nd Cir.1997). In *Gucci,* the Second Circuit acknowledged that a party appealing a reorganization plan has limited remedy on appeal because the Court of Appeals does not have the power to affect the validity of a sale of property to a good faith purchaser pursuant to an unstayed authorization. *Id.* at 839 (recognizing that courts have regularly ruled that the appeal in such a case is moot). In such case, post-judgment legal relief to recover damages is not available because the assets of the debtor have already been sold and the proceeds distributed under the appealed plan. Such injury can constitute irreparable injury. *See Dixon,* 835 F.2d at 560 n. 1.

The Fifth Circuit addressed such a situation in *Barrier.* The unsecured creditors in *Barrier* appealed the bankruptcy court's order confirming the plan of reorganization. *Barrier,* 776 F.2d at 1299. In granting mandamus relief requiring the district court to enter a stay of the bankruptcy court's order, the Court of Appeals recognized that the likelihood that distribution would occur pursuant to the plan pending appeal and that the movant would receive nothing under the distribution, effectively undermining the utility of the movant's appeal. *Id.* at 1299 n. 1, 1300. The likelihood of deterioration of the debtor's assets, which then undermined the ability of the movant to propose an alternate plan if successful on appeal, constituted a serious risk of harm to the movant warranting the grant of a stay. *Id.* at 1300.

Therefore, the Court finds that the Bankruptcy Court abused its discretion in determining that Andrews would not suffer irreparable harm if the stay was not granted. However, in light of Andrews's failure to show a likelihood of success on the merits, the showing of irreparable harm does not provide a sufficient basis to grant a stay.

### C. Harm to Creditors

A fundamental purpose of the bankruptcy system is " 'to convert the assets of the bankrupt into cash for distribution among creditors.' " *Security Nat'l Bank v. Cotton (In re Atlanta Int'l Raceway, Inc.),* 513 F.2d 546, 550 (5th Cir.1975) (*quoting Maynard v. Elliott,* 283 U.S. 273, 277, 51 S.Ct. 390, 75 L.Ed. 1028 (1931)). Delay in payment to creditors runs counter to this fundamental purpose and, therefore, harms creditors.

The bankruptcy proceedings of PPI and PPDI have been pending for nearly thirteen months. The claims of the unsecured creditors undoubtedly were in existence well prior to that date. As the evidence

indicates, the majority of the unsecured creditors of PPI—with claims totally over $2,200,000—are small, locally owned business. They have suffered substantial harm from the delay in payment occasioned by the bankruptcy of PPI and PPDI. Though the funds are in an interest bearing account, it is the further delay attending any stay pending appeal that exacerbates this harm already suffered by the remaining unsecured creditors.

### D. Public Interest

Beyond the standard argument that a successful appeal would benefit the bankruptcy system by clarifying certain unresolved issues of law, Andrews fails make any convincing argument that the public interest is served by allowing the stay. Every appeal that attempts to "correct" an erroneous ruling or order benefits the public interest in that the legal system is, by that correction, improved. However, Andrews presents no other real benefit to the public interest served by this stay. Even the benefits espoused by Andrews are contingent upon a successful appeal. As discussed above, the Court does not find a likelihood that Andrews would succeed on any of his points on appeal. This case simply is not the proper case through which resolution of these questions should be made. And the public interest is therefore not served by allowing a stay.

### Conclusion

The Court finds that the Movant Glynn Andrews has failed to show that his appeal has a likelihood of success on the merits, that the other creditors will not be harmed by a stay, or that the public interest is served by an order for a stay. Though Andrews shows that he will suffer irreparable injury, the other factors, especially the absence of a showing of a likelihood of success on the merits, counsel against this Court issuing an order to stay the Bankruptcy Court's orders pending appeal.

It is therefore ORDERED that the Movant Glynn Andrews's Motion to Stay the Bankruptcy Court's Order for Substantive Consolidation and Order Confirming the Reorganization Plan be DENIED. So that there is time to appeal this matter to the Court of Appeals for the Fifth Circuit, it is ORDERED that the Bankruptcy Court's Order for Substantive Consolidation and Order Confirming the Reorganization Plan is STAYED through and until December 20, 2000. Because the proceeds in question are currently in an interest bearing, federally insured account, it is ORDERED that Andrews is not required to post a bond pending appeal to the Court of Appeals.