# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10461

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2020

Lyle W. Cayce
Clerk

In the Matter of: VALUEPART, INCORPORATED,

Debtor

JINIL STEEL COMPANY, LIMITED,

Appellant

v.

VALUEPART, INCORPORATED; DENNIS FAULKNER, as trustee of the
Creditor Trust,

Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-2239

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:*

This appeal arises from a district court decision affirming the bankruptcy court's rejection of Jinil Steel Company's ("Jinil") late-filed proof of claim as related to ValuePart, Inc.'s ("ValuePart") Chapter 11 bankruptcy

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10461

proceedings. Because Jinil has failed to show that its year-long delay in filing its proof of claim was the result of "excusable neglect," we AFFIRM the district court's judgment.

I.

Jinil is a South Korean steel company. Jinil sold steel products on credit to another Korean company, WooSung Hitech ("WooSung"), which in turn sold products to ValuePart, a U.S. company. In 2014, WooSung began "delaying" its payments to Jinil. Jinil became concerned about WooSung's financial condition and cut off future credit sales. Because ValuePart relied on the products it received from WooSung, ValuePart signed a guarantee agreement, promising to pay Jinil directly for the steel WooSung purchased from Jinil if WooSung failed to make its required payments. The guarantee was signed on September 3, 2015, and was "valid for 12 months, starting from the signing date."

A few months later, WooSung again defaulted on its payments to Jinil. WooSung was apparently "financially shaken" because it was not "receiving payments from ValuePart." Because ValuePart was obligated under the guarantee agreement to pay Jinil directly when WooSung defaulted, Jinil began making extensive "efforts to get paid[,] by numerous demands and contacts to ValuePart." At some point in 2015, "[Jinil] had no choice [but] to hire an attorney" to collect on WooSung's debts from ValuePart. In the years 2015, 2016, and 2017, the record reflects that Jinil hired at least one Italian law firm to bring civil and criminal claims against ValuePart.

WooSung filed for bankruptcy in Korea in June 2016. Soo Hong Lee, Jinil's managing director and general manager, filed a claim in the Korean court on Jinil's behalf, but the record is silent as to whether Jinil recovered anything from WooSung's eventual liquidation. In October 2016, Mr. Lee began an extended leave of absence for "personal reasons." He did not return to work until March 2018.

2

No. 19-10461

On October 27, 2016, ValuePart filed for bankruptcy in the Northern District of Texas. The bar date established for filing proofs of claims was March 7, 2017 ("Bar Date"). ValuePart's claims agent sent a notice of ValuePart's bankruptcy and a proof of claim form ("Notice") to Jinil by first-class mail in November 2016. The Notice warned: "A CREDITOR WHO FAILS TO FILE A PROOF OF CLAIM ON OR BEFORE THE DEADLINE LISTED BELOW MAY BE BARRED FROM ASSERTING ITS CLAIMS AGAINST THE DEBTOR." The Bar Date was prominently displayed in a separate text box in the middle of the second page of the Notice, which stated in bold font that the "DEADLINE AND METHOD FOR FILING PROOFS OF CLAIM[S] . . . has been set for MARCH 7, 2017."

On January 4, 2017, Jinil's accounting manager, Chun Young Hwa, sent ValuePart's claims agent an email with some questions about the Notice Jinil had received. Mr. Hwa asked if Jinil was "a creditor or an entity [with] a right of [a] creditor" in ValuePart's bankruptcy and asked "why the court sent" Jinil the Notice. Two days later, the claims agent responded to Mr. Hwa's email, explaining how Jinil could file a proof of claim and once again stating that the "Bar Date for filing a Proof of Claim is March 7, 2017." Jinil did not mention ValuePart's bankruptcy or the Notice to its Italian counsel.

Shortly thereafter, on January 13, 2017, WooSung filed a proof of claim in the ValuePart bankruptcy for $2.2 million in unpaid invoices. ValuePart objected to WooSung's proof of claim. Because WooSung failed to respond to the objection, the bankruptcy court sustained the objection in October 2017.[1]

Despite Mr. Hwa's January 2017 correspondence with ValuePart's claims agent and Jinil's representation by Italian counsel in other matters

---

[1] It appears that WooSung was liquidated by the time ValuePart's objection was filed, but the record does not definitively say so.

No. 19-10461

concerning ValuePart, the bankruptcy court did not receive Jinil's proof of claim (dated February 28, 2018) until March 6, 2018, approximately one year after the Bar Date. The proof of claim came after the son of Jinil's owner—who had studied in the United States—contacted the claims agent in late February 2018 regarding Mr. Hwa's email from the prior year. Then, on June 25, 2018, Jinil moved to allow its late-filed proof of claim, arguing that the Korean-English language barrier had prohibited it from "comprehend[ing] a single mailed notice in English" and that "its failure to fully understand US bankruptcy laws amount[ed] to excusable neglect."

The bankruptcy court held a hearing on Jinil's motion on July 30, 2018. A few days later, the bankruptcy court denied Jinil's motion, finding that Jinil had failed to establish excusable neglect. Jinil appealed to the district court, and the district court affirmed the judgment. Jinil then appealed to this court.

## II.

"Our review is . . . focused on the actions of the bankruptcy court." *Official Comm. of Unsecured Creditors v. Moeller* (*In re Age Ref., Inc.*), 801 F.3d 530, 538 (5th Cir. 2015). We review the bankruptcy court's refusal to allow a late-filed proof of claim for abuse of discretion. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398−99 (1993). The bankruptcy court's component findings of fact are reviewed for clear error, and its conclusions of law de novo. *In re Age Ref., Inc.*, 801 F.3d at 538.

## III.

### A.

In a Chapter 11 bankruptcy, an unsecured creditor whose claim is not listed on the debtor's schedule and who fails to file a timely proof of claim "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2). But, even after the filing deadline has passed, the bankruptcy court has discretion to permit a creditor

to file a proof of claim "where the failure to act [i.e., to file earlier] was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). "Excusable neglect is the failure to timely perform a duty due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." *Omni Mfg., Inc. v. Smith* (*In re Smith*), 21 F.3d 660, 666 (5th Cir. 1994) (cleaned up). In evaluating whether to excuse a late filing, a court considers several factors laid out in the Supreme Court's decision in *Pioneer*, which include: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395. The burden to show excusable neglect is on the movant—i.e., the creditor seeking to file a late claim. *Bank of Am., N.A. v. Allen Capital Partners, L.L.C.* (*In re DLH Master Land Holding, L.L.C.*), 464 F. App'x 316, 318 (5th Cir. 2012).

On appeal, Jinil argues that its failure to file a timely proof of claim was "excusable neglect" because (1) its employees did not speak English; (2) it believed that ValuePart had included its debt to Jinil on the schedules, in light of Jinil's Italian claims against ValuePart; and (3) it was relying on the proof of claim that WooSung had filed for amounts that ValuePart owed on the same invoices.

The bankruptcy court made three key findings of fact. First, at least two months before the Bar Date, Jinil received actual notice of ValuePart's bankruptcy petition, along with the proof of claim form. This finding was supported by Mr. Hwa's email to ValuePart's claims agent on January 4, 2017—sixty days before the Bar Date—requesting more information on submitting a proof of claim. Second, Jinil representatives had a sufficient understanding of English to be "aware[] of the notices . . . and the fact that Jinil Steel may have to take additional steps to assert a claim against

[ValuePart]." The court supported this finding with Mr. Hwa's email, as well as the email correspondence between the claims agent and the son of Jinil's owner nearly a year later. Third, Jinil's failure to file a timely proof of claim was not because Jinil was relying on WooSung's claim. The court reasoned that the evidence did not support such an assertion, and, given that the person responsible for handling the ValuePart claim—Mr. Lee—was on a leave of absence, "he could not have made a decision not to file a proof of claim in reliance on the WooSung [proof of claim]."

We hold that the bankruptcy court's findings of fact were not clearly erroneous. Clear error means that the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). If the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that . . . it would have weighed the evidence differently." *Id.* at 574. First, we agree that Jinil undisputedly received the Notice—Mr. Hwa's email to the claims agent is proof of this. Further, Mr. Hwa's email demonstrates that, prior to the Bar Date, at least one person at Jinil understood that Jinil was required to submit a proof of claim in ValuePart's bankruptcy if Jinil believed itself to be a creditor. Moreover, the February 2018 email to ValuePart's claims agent from the English-speaking son of Jinil's owner implores us to question why someone at Jinil did not involve him earlier. As for the bankruptcy court's finding of fact that Jinil did not rely on WooSung's timely-filed proof of claim, we agree that the record does not support Jinil's argument that it did so. As the bankruptcy court noted, Mr. Lee was not around to make the decision to rely on WooSung's proof of claim. And there is no evidence that he instructed anyone at Jinil to rely on WooSung's proof of claim.

No. 19-10461

Although Jinil does not dispute that the *Pioneer* factors apply here, it contests the bankruptcy court's determinations that "[t]he reasons offered for the delay [in Jinil's filing of its proof of claim] were not convincing and certainly were within [its] reasonable control"; that "[a]llowing a claim in excess of $1.5 million will undoubtedly prejudice [ValuePart] and the other unsecured creditors"; and that "allowing claims to be filed [one year] past the Bar Date would have a significant effect on judicial proceedings." We agree that the bankruptcy court did not abuse its discretion in finding that "the *Pioneer* factors weigh against a finding of excusable neglect."

We do not find the reasons offered for Jinil's delay in filing—i.e., (1) the Korean-English language barrier; (2) that ValuePart "should have known" to include Jinil on its schedules because of the parties' Italian litigation; and (3) that Jinil was relying on WooSung's claim—to be persuasive. As explained above, reasons (1) and (3) are unconvincing because, respectively: the email correspondence between ValuePart's claims agent and (i) Mr. Hwa and (ii) the son of Jinil's owner show that at least one person at Jinil, as well as someone closely tied to Jinil, had a sufficient grasp of English, and the record does not show that Mr. Lee sought to rely on WooSung's proof of claim. Reason (2) is refuted by the fact that the Notice explicitly stated that Jinil could view ValuePart's schedules at any time. To determine whether it was listed on the schedules, all Jinil had to do was look: "[ValuePart] will file a schedule of creditors pursuant to Federal Rule of Bankruptcy Procedure 1007. [Jinil] may review the schedules at the bankruptcy clerk's office or online at www.upshotservices.com/Valuepart."

We also find that the delay in filing was within Jinil's "reasonable control." Based on the bankruptcy court's findings of fact, we believe Jinil had all the information it needed to file a timely proof of claim. Jinil has not shown

No. 19-10461

that its failure to do so was based on factors akin to incarceration or ill health. *See Pioneer*, 507 U.S. at 393.

Finally, we agree with the bankruptcy court that allowing Jinil's approximately $1.5 million and one-year-late claim will prejudice ValuePart and the other unsecured creditors and could have a significant effect on future judicial proceedings. As this court has held, "in virtually any bankruptcy proceeding, time is the essence of prejudice." *Pyramid Mobile Homes, Inc. v. Speake* (*In re Pyramid Mobile Homes, Inc.*), 531 F.2d 743, 746 (5th Cir. 1976). And we have found that a bankruptcy court did not abuse its discretion in denying a creditor's motion to file its proof of claim just forty-two days late. *See In re DLH Master Land Holding, L.L.C.*, 464 F. App'x at 318–19; *see also Kollinger v. Hoyle* (*In re Kollinger*), 551 F. App'x 104, 108 (5th Cir. 2013) ("[N]o excuse justifies failing to file a brief for ten months."). Thus, the bankruptcy court did not abuse its discretion in denying Jinil's motion to allow its late-filed claim.

## B.

Jinil also stresses an argument that was not included in its motion for allowance of its proof of claim: that its claim should be considered timely because the Notice was not served in accordance with the Hague Service Convention. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 [hereinafter Hague Service Convention]. The bankruptcy court did not have the benefit of any briefing on this argument. Instead, Jinil's attorney mentioned the Hague Service Convention for the first time at the hearing on Jinil's motion to allow its late-filed proof of claim. The attorney noted that both the United States and South Korea are parties to the Convention, that the Convention requires "judicial and extrajudicial documents . . . first be sent over to the Central Authority administered by the

No. 19-10461

Supreme Court of South Korea," and that the Convention also requires "that any English documents or any foreign language documents . . . be translated into Korean." But he failed to cite any relevant cases interpreting the scope of the Convention or its applicability to bankruptcy notices.

Thus, we hold that Jinil has forfeited its argument with regard to the Hague Service Convention because it failed to properly "rais[e] [the argument] to such a degree that the trial court may rule on it." *Butler Aviation Int'l, Inc. v. Whyte* (*In re Fairchild Aircraft Corp.*), 6 F.3d 1119, 1128 (5th Cir. 1993), *abrogated on other grounds by Tex. Truck Ins. Agency, Inc. v. Cure* (*In re Dunham*), 110 F.3d 286, 288–89 (5th Cir. 1997); *see also MaddenSewell, LLP v. Mandel*, 498 B.R. 727, 729 (E.D. Tex. 2013) ("[L]itigants [must] properly present and brief the grounds for claims, defenses, or objections . . . .").[2]

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment affirming the bankruptcy court's holding that Jinil has not shown excusable neglect.

---

[2] Jinil makes two other arguments in its briefing: (1) that the bankruptcy court's decision denied it due process, and (2) that WooSung's proof of claim should be deemed an "informal" proof of claim by Jinil, or, alternatively, that Jinil's proof of claim was an "amended" version of WooSung's timely proof of claim. These claims were not raised to the bankruptcy court, so they are forfeited.